# IN RE: DEWAYNE H.

[No. 16 (Adv.), September Term, 1981.]

*Decided June 3, 198..*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Maureen O'Ferrall, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, F. Ford Loker, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Richard Scherr, Assistant State's Attorney for Baltimore City,* on the brief, for petitioner.

*Victoria Salner Keating, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for respondent.

Sмith, J., delivered the opinion of the Court.

Assuming that a mandatory provision of Maryland Rule 915 a that a "disposition hearing [in a juvenile proceeding] shall be held no later than thirty days after the conclusion of the adjudicatory hearing" is applicable at the level of a juvenile court master, we shall here hold that a trial judge erred when he concluded that dismissal of the proceeding was the proper sanction for disobedience by the master.

Dewayne H. (the juvenile) was charged in Baltimore City with storehouse breaking and related offenses. An adjudicatory hearing was held before a master for juvenile causes on September 29, 1980. The master found that the juvenile was delinquent. On that day a disposition hearing was set for October 30, 1980, thirty-one days later. At that time the master recommended that the juvenile be placed on probation to the Juvenile Services Administration for one year. On November 3 the juvenile excepted to this recommended disposition.[1] The juvenile judge regarded himself as bound under the rule to dismiss the proceeding. In so doing, however, he recognized, as he put it, "The preamble of the juvenile law is to do substantial justice and I am supposed to sit here in a fatherly like way and help the child and I am not helping this child with this legal technicality today . . . ." The State entered an appeal to the Court of Special Appeals. Because of the public importance to the entire juvenile justice system of the issue here presented, we granted the writ of certiorari prior to the hearing of the appeal in that court.

---

[1]. It must not be forgotten that, as we said in Matter of Anderson, 272 Md. 85, 106, 321 A.2d 516, *appeal dismissed,* 419 U.S. 809 (1974), *cert. denied,* 421 U.S. 1000 (1975), "[A] master is a ministerial officer, and not a judicial officer. . . . [He] is entrusted with no part of the judicial power of this State . . . ." As a matter of fact, the present statute, Maryland Code (1974, 1980 Repl. Vol.) § 3-813 (d), Courts and Judicial Proceedings Article, specifies, "The proposals and recommendations of a master for juvenile causes do not constitute orders or final action of the court."

We do not know precisely what took place before the juvenile master at the time of the adjudicatory hearing when the disposition hearing was set. We are told that while the proceeding "was tape recorded, the poor quality of the recording made transcription impossible." No effort was made to have the record reconstructed by, for example, an affidavit from the master. *Cf. Kennedy v. State,* 289 Md. 54, 71-72, 421 A.2d 1376 (1980). Apparently no issue of waiver was presented to the circuit judge.[2]

We reviewed the background of juvenile proceedings in Maryland in *Matter of Anderson,* 272 Md. 85, 321 A.2d 516, *appeal dismissed,* 419 U.S. 809 (1974), *cert. denied,* 421 U.S. 1000 (1975). The General Assembly has somewhat revised the juvenile law since then. It is now embodied in Code (1974, 1980 Repl. Vol.) *Title 3, Subtitle 8,* Courts and Judicial Proceedings Article. The provision for masters is found in § 3-813. Subsection (b) provides that if a master is appointed for juvenile causes he is authorized to conduct hearings. The proceedings are to be recorded and he is to make findings of fact, conclusions of law, and recommendations as to an appropriate order. His proposals and recommendations are to be in writing, "and, within 10 days after the hearing, the original shall be filed with the court and a copy served upon each party to the proceeding." Subsection (c) provides that any party may file written exceptions to any or all of the master's findings, conclusions, and recommendations. Subsection (d) states that the proposals and recommendations "do not constitute orders or final action of the court" but "shall be promptly reviewed by the court; and in the absence of timely and proper exceptions, they may be adopted by the court and appropriate orders entered based on them."

Maryland Rule 911 dealing with juvenile masters was amended on November 5, 1976, effective January 1, 1977.

---

2. In a somewhat similar context having to do with the mandate of Maryland Rule 746 that criminal cases be brought to trial within 180 days, Judge Wilner recently commented for the Court of Special Appeals in State v. Lattisaw, 48 Md. App. 20, 28, 425 A.2d 1051 (1981), "Defense counsel presumably can count to 180 as well as prosecutors . . . and they can figure out when the time under the Rule expires." The point is well taken.

Under Maryland Constitution Art. IV, § 18 (a) a rule adopted subsequent to a statute will govern in the event of any inconsistency and vice versa. Rule 911 a 2 authorizes a master to hear matters such as the charge against this juvenile. Under Subsection b "[w]ithin ten days following the conclusion of a disposition hearing . . . , he shall transmit to the judge the entire file in the case, together with a written report of his proposed findings of fact, conclusions of law, recommendations and proposed orders with respect to adjudication and disposition." A copy of his report and proposed order is to be served upon each party as provided by Rule 306. Subsection c provides that any party may file exceptions to the master's proposed findings, conclusions, recommendations or proposed orders within five days after service of the master's report upon the party. A prompt hearing is to be scheduled upon the filing of exceptions. In the absence of timely and proper exceptions, under Rule 911 d the proposed findings of fact, conclusions of law and recommendations "may be adopted by the court and the proposed or other appropriate orders may be entered based on them."

The juvenile act in § 3-819 provides for an adjudication hearing and in § 3-820 for a disposition hearing. The controversy here comes under Rule 915 a providing that if after an adjudicatory hearing is held the court determines that the allegations of the petition have been sustained it shall promptly schedule a separate disposition hearing to "be held no later than thirty days after the conclusion of the adjudicatory hearing." It then goes on in Rule 915 b to provide, "If the hearing is conducted by a master, the procedures of Rule 911 . . . shall be followed."

Lexicographers commonly understand the auxiliary verb "shall" used in the second and third persons to mean a command, as "Thou shall not kill." See for example *Webster's New International Dictionary,* 2300 (2d ed. Unabr. 1959); *Random House Dictionary of the English Language,* 1310 (Unabr. ed. 1967); and *American Heritage Dictionary of the English Language,* 1189 (New College ed. 1976).

The context in which words are used has a bearing on their interpretation. For example, in *In Re James S.*, 286 Md. 702, 410 A.2d 586 (1980), the statute specified that a juvenile "petition alleging delinquency shall be filed within 15 days after the receipt of a referral from the intake officer." We said that we were "struck by the similarity between the language used in the statute [t]here under consideration and that in the various limitations of actions found in Code (1974, 1979 Cum. Supp.) Title 5, Subtitle 1, Courts and Judicial Proceedings Article." *Id.* at 711. For instance, § 5-101 there specifies, "A civil action at law shall be filed within three years from the date it accrues" and § 5-106 (a) relative to certain prosecutions says they "shall be instituted within one year after the offense was committed." We held in *James S.*:

> We see this statute as clearly and unambiguously requiring that a petition alleging delinquency must be filed within 15 days after the receipt of a referral from the intake officer. We view this as entirely within the scheme set down in the act for expediting juvenile matters. Once the issue of a tardy filing was raised here, dismissal of the delinquency petition was mandated. Thus, it is virtually the same as the dismissal required in the case of an ordinary civil action filed three years and one day "from the date it accrues" or a prosecution for assault (a common law misdemeanor not required by statute to be punished by confinement in a penitentiary) instituted a year and a day after the offense was committed. [*Id.* at 713.]

The language here is clear and unambiguous. However, its mandatory nature does not indicate the sanction to be applied nor does the sanction necessarily inure to the benefit of the juvenile. It must not be forgotten that one of the purposes of the juvenile statute as set forth in § 3-802 (a) (2) is "[t]o remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior . . . ." Therefore, § 3-820 (b) relative to disposition

provides, "The overriding consideration in making a disposition is a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest." As pointed out by Judge Gilbert for the Court of Special Appeals in *In Re Appeal Misc. No. 32, Term 1975,* 29 Md. App. 701, 704, 351 A.2d 164 (1976), "Judges in juvenile cases do not think in terms of guilt, but rather in terms of the need of the child for protection, guidance, or rehabilitation," citing *Matter of Davis,* 17 Md. App. 98, 299 A.2d 856 (1973). In the latter case Chief Judge Orth said for the court:

> The *raison d'etre* of the Juvenile Causes Acts is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal. He is not to be punished but afforded supervision and treatment to be made aware of what is right and what is wrong so as to be amenable to the criminal laws. [*Id.* at 104.]

Enlightenment as to the sanction to be applied for violation of a command with the word "shall" in a situation similar to that in the case at bar is found in *State v. Hicks,* 285 Md. 310, 403 A.2d 356 (1979). The Court there said:

> There are two circumstances, however, under which dismissal is not an appropriate sanction for violation of Rule 746.
>
> First, in addition to the requirement that, absent extraordinary cause, criminal cases at the circuit court level be tried within 120 days of the appointment or waiver of counsel or after the appearance of counsel under Rule 723, Rule 746 also requires that the act of setting this trial date be done within 30 days. Of course, as long as the case is tried within the 120-day deadline, the purpose of the rule and the statute upon which it is based, namely having the case tried promptly, will be accomplished, even if the setting of that trial date is not done within 30 days. In other words, the

legislative purpose underlying § 591 and Rule 746 will in no way be advanced by holding that dismissal is the appropriate sanction for violation of the 30-day requirement. For this reason, we do distinguish between the 120-day requirement and the 30-day requirement. While the 30-day requirement is mandatory for those persons involved in setting the trial date, we hold that dismissal of the criminal case is not an appropriate sanction for violation of the 30-day provision. [*Id.* at 335.]

Unlike the bringing of a civil or criminal proceeding where the applicable time limits are largely in the control of the party initiating the litigation, neither party here had control over the date set for the disposition hearing. We do not have before us in this proceeding the question of what, if any, sanction other than dismissal of the proceeding might be applied. There was at least a suggestion that the juvenile judge might confer with the masters pointing out the mandatory nature of the rule. Conceivably there could be yet other remedies. The State as the representative of the general public has an interest in seeing that this juvenile is rehabilitated so that he becomes a useful citizen and in no way a menace to society. In that circumstance it simply does not follow that the proper sanction for violation of the rule is dismissal of the proceeding. The reasoning we have set forth from *Hicks* is applicable here. The juvenile judge erred.

*Judgment reversed; case remanded for further proceedings consistent with this opinion; costs to be paid by Dewayne H., the appellee.*