520 A.2d 712

**In re DARRYL D.**

**No. 37, Sept. Term, 1986.**

Court of Appeals of Maryland.

Feb. 2, 1987.

George E. Burns, Jr., Asst. Public Defender (Alan H. Murrell, Public Defender and Julia Doyle Bernhardt, Assistant Public Defender, on the brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals (retired), Specially Assigned.

MARVIN H. SMITH, Judge, Specially Assigned.

We shall here hold that a juvenile court judge abused his discretion when, pursuant to the recommendation of a master, he dismissed petitions which alleged that Darryl D. was a delinquent child. Accordingly, we shall affirm the judgment of the Court of Special Appeals in *In Re Darryl D.*, 66 Md.App. 434, 504 A.2d 676 (1986), although we shall not adopt the reasoning of that court.

An adjudicatory hearing before a Baltimore City juvenile master was scheduled for 9:00 a.m. on January 11, 1985. That hearing, however, never took place. The facts may be gleaned from the proposed findings of fact, conclusions of law and recommendations of the master to the juvenile court judge. With minor editing, her statement is as follows:

"On that morning, all state and defense witnesses, as well as respondent's counsel (Public Defender Panel), were ready for trial at 9:30 a.m. My staff and I were also ready. The Assistant State's Attorney did not appear or let anyone (including the Court, my staff, respondent's counsel, state or defense witnesses) know where he was or when he would be coming to Court.[1]

"After our other scheduled matters were resolved, we all were still waiting for word from the Assistant State's

---

1. This statement is not entirely consistent with the transcript of the proceedings before the master. The master there stated that the assistant State's attorney "popped his head in and told the officer he'd be right back and disappeared without any courtesy to any of these 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 people in this court room this Master included. We, he did not tell us where he was going."

Attorney. (We had searched for him and finally found him in another Court. I left him the message to contact my Court immediately upon concluding that matter.) He neither came to my Court nor called or contacted any of us.

"At about 11:15 a.m., I went back to the other Court, found him still there on another matter, and left a message that I was dismissing Darryl D.'s case if it did not start by 11:30 a.m.[2] I went back to my Courtroom and advised all state and defense witnesses, family, respondent's counsel, and my staff, of this intention, and inquired as to whether said action would result in a 'travesty of justice'. The police officer on the case advised me it certainly would not, but was a good idea. The victim and parents and state's witnesses relayed the same impression. No one was opposed to the dismissal.

"At 11:30 a.m., I was prepared to gather everyone in Court to dismiss the case, but another Assistant State's Attorney came down to my Courtroom and took them out in the hall. At 11:45 a.m., she called the case (with all those witnesses) for a full trial, at which point, upon motion of defense counsel, I dismissed the case for lack of timely prosecution."

When the master announced that she was "dismissing this case at this time upon motion by defense counsel," an assistant State's attorney was present. She said to the master:

"We are now prepared to proceed. I can proceed even though I am missing one witness who will be here shortly. She is on call and I called her before I came downstairs after I got a message ... [inaudible] I came down immediately after I got the message."

---

2. The master here overstated her authority. She but had power to recommend to the juvenile court judge, because, as we made clear in *Matter of Anderson,* 272 Md. 85, 106, 321 A.2d 516, 527, *appeal dismissed,* 419 U.S. 809, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975), a juvenile master "is entrusted with no part of the judicial power of this State."

The State took exceptions to the master's report to the Circuit Court for Baltimore City. Its exceptions were denied after hearing.

An appeal followed to the Court of Special Appeals. Judge Garrity said for that court:

"We hold that the circuit court, sitting as a juvenile court, may not under our juvenile code or under our rules governing juvenile proceedings dismiss summarily a valid petition alleging delinquency, over the State's Attorney's objection and prior to an adjudicatory hearing, upon the ground that there has been a lack of prosecution not amounting to the denial of a constitutional right to a speedy trial or the violation of a mandatory period of limitation." 66 Md.App. at 440, 504 A.2d at 678.

We granted the juvenile's petition for a writ of certiorari in order that we might address the important public question here involved.

At the outset it is well to bear in mind that although certain of the constitutional rights incident to criminal prosecutions apply to juvenile delinquency proceedings, in this State the proceedings are civil rather than criminal in nature. *In re Johnson*, 254 Md. 517, 523, 255 A.2d 419, 422 (1969), *appeal dismissed*, 403 U.S. 926, 91 S.Ct. 2257, 29 L.Ed.2d 706 (1971). We took occasion in *Matter of Anderson*, 272 Md. 85, 96–97, 321 A.2d 516, 522–23, *appeal dismissed*, 419 U.S. 809, 95 S.Ct. 21, 42 L.Ed.2d 35 (1974), *cert. denied*, 421 U.S. 1000, 95 S.Ct. 2399, 44 L.Ed.2d 667 (1975), to trace the equity background of our juvenile courts and indicated that in Baltimore City and in all of the counties of the State, other than Montgomery, juvenile matters were handled by equity courts, which was not always the case.

Maryland Code (1974, 1984 Repl.Vol., 1986 Cum.Supp.) § 3–824(a)(1), Courts and Judicial Proceedings Article makes plain that "[a]n adjudication of a child pursuant to [our juvenile law] is not a criminal conviction for any purpose and does not impose any of the civil disabilities

ordinarily imposed by a criminal conviction." The Code provisions and rules applicable to juvenile proceedings, while expressly permitting the State's attorney to dismiss a juvenile petition alleging delinquency (Code (1974, 1984 Repl.Vol., 1986 Cum.Supp.) § 3–812(d), Courts and Judicial Proceedings Article), do not address whether and under what circumstances a circuit court may do so.[3] Although Title 2 of the Maryland Rules of Procedure authorizes dismissal of a civil action for lack of prosecution in some circumstances and juvenile proceedings are civil, Maryland Rule 1–101 states specifically that Title 2 is not applicable to juvenile causes.

Because we believe that the judge in this instance abused his discretion, we prefer to leave for another day the question of the inherent power of a court to dismiss a juvenile cause in circumstances similar to those in the case at bar, to assume, without deciding, that the court was vested with such power, and to proceed to an examination of the issue of an abuse of discretion.[4]

---

**3.** The case at bar is not to be confused with a case such as *In re James S.,* 286 Md. 702, 410 A.2d 586 (1980), where the statute mandated that a petition alleging delinquency be filed by the State's attorney "within 15 days after the receipt of a referral from the intake officer" and there was noncompliance with the statute. We there said, "Once the issue of a tardy filing was raised here, dismissal of the delinquency petition was mandated." 286 Md. at 713, 410 A.2d at 591.

**4.** On this issue in *Link v. Wabash R.R.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), Justice Harlan said for the Court:
"The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted. The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts. The power is of ancient origin, having its roots in judgments of *nonsuit* and *non prosequitur* entered at common law, *e.g.,* 3 Blackstone, Commentaries (1768), 295–296, and dismissals for want of prosecution of bills in equity, *e.g., id.,* at 451. It has been expressly recognized in Federal Rule of Civil Procedure 41(b), which provides, in pertinent part:
'(b) Involuntary Dismissal: Effect Thereof. For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of

There is no Maryland case directly on point. Nonetheless, Maryland's enacted law and decisional law, as well as cases decided in other jurisdictions, are instructive. Code (1974, 1984 Repl.Vol.) § 3–802, Courts and Judicial Proceedings Article, sets forth the special purposes of the juvenile proceedings subtitle. The overriding concerns include providing

"for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation *consistent with the child's best interests and the protection of the public interest*"

and removing "from children committing delinquent acts the taint of criminality and the consequences of criminal behavior." *Id.* § 3–802(a)(1), (a)(2) (emphasis added). Section 3–802 further provides, "This subtitle shall be liberally construed to effectuate these purposes." *Id.* § 3–802(b).

Decisions by this Court and the Court of Special Appeals have placed great emphasis upon the special goals of juvenile proceedings. In *In re Dewayne H.*, 290 Md. 401, 430 A.2d 76 (1981), we held that a juvenile court judge erred in dismissing a delinquency proceeding because a juvenile master failed to conduct a disposition hearing within 30 days of the adjudicatory hearing as required by the rules. There was no suggestion of fault on the part of the State. We acknowledged that the 30–day provision was mandatory. We said, however, that it did not follow that dismissal was the appropriate sanction:

---

any claim against him. . . . Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction or for improper venue, operates as an adjudication upon the merits.' "
370 U.S. at 629–30, 82 S.Ct. at 1388, 8 L.Ed.2d at 737–38 (footnote omitted).
We do not have a counterpart of Fed.R.Civ.P. 41(b) applicable to the case at bar.

"[I]ts mandatory nature does not indicate the sanction to be applied nor does the sanction necessarily inure to the benefit of the juvenile. It must not be forgotten that one of the purposes of the juvenile statute as set forth in § 3-802(a)(2) is '[t]o remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior....' Therefore, § 3-820(b) relative to disposition provides, 'The overriding consideration in making a disposition is a program of treatment, training, and rehabilitation best suited to the physical, mental, and moral welfare of the child consistent with the public interest.'" 290 Md. at 405-06, 430 A.2d at 79.

In determining that dismissal was improper, we suggested that other sanctions might be available, sanctions which would not thwart the policies of the juvenile statute:

"We do not have before us in this proceeding the question of what, if any, sanction other than dismissal of the proceeding might be applied. There was at least a suggestion that the juvenile judge might confer with the masters pointing out the mandatory nature of the rule. Conceivably there could be yet other remedies. The State as the representative of the general public has an interest in seeing that this juvenile is rehabilitated so that he becomes a useful citizen and in no way a menace to society." 290 Md. at 407, 430 A.2d at 80.

In *Dewayne H.*, we quoted from *Matter of Davis*, 17 Md.App. 98, 299 A.2d 856 (1973), where Chief Judge Orth said for the Court of Special Appeals:

"The *raison d'etre* of the Juvenile Causes Act is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal. He is not to be punished but afforded supervision and treatment to be made aware of what is right and what is wrong so as to be amenable to the criminal laws." 17 Md.App. at 104, 299 A.2d at 860.

Cases in which the Court of Special Appeals has held that dismissal is an improper sanction, because of the detriment to the juvenile and to the public, for failure to comply with a

time limit imposed by the rules include *In re Trevor A.*, 55 Md.App. 491, 462 A.2d 1245 (1983), *cert. dismissed as improvidently granted*, 299 Md. 428, 474 A.2d 207 (1984), and *In re Howard L.*, 50 Md.App. 498, 438 A.2d 939 (1982). For a review of both juvenile and nonjuvenile cases in which dismissal was held to be an inappropriate sanction for violation of a time limit imposed by a statute or rule, see *State v. One 1980 Harley Davidson*, 303 Md. 154, 492 A.2d 896 (1985).

If, in light of the special objectives of juvenile proceedings, it is error to dismiss for violation of a time provision *mandated* by the rules, it would seem axiomatic, absent exceptional circumstances, that it is an abuse of discretion to order dismissal as a means of reprimanding a tardy prosecutor. This is particularly so where there is scant, if any, evidence of willfulness and where the State was ready to call the case within 15 minutes of the master's deadline. Moreover, an attorney's failure to appear is punishable under proper circumstances as a contempt. *See, e.g., Kandel v. State*, 252 Md. 668, 250 A.2d 853 (1969). *See generally* Annotation, *Attorney's Failure to Attend Court, or Tardiness, As Contempt*, 13 A.L.R.4th 122 (1982). Contempt certainly would have constituted a less drastic alternative. *Cf. English v. State*, 8 Md.App. 330, 259 A.2d 822 (1969), where Judge Orth said for the court:

"[W]e think the denial of a postponement of the trial to enable appellant a fair opportunity to secure the appearance of counsel employed by him was an abuse of judicial discretion in the circumstances. The proper sanction for the failure of appellant's counsel to appear was not to force appellant to go to trial without such opportunity to obtain the presence of his counsel but for the court to take such action against the derelicting counsel as may have been appropriate." 8 Md.App. at 337, 259 A.2d at 826–27.

In civil cases to which Title 2 of the rules applies, we have noted that the decision whether or not to dismiss a case for lack of prosecution under a predecessor to current Rule

2–507 rests within the sound discretion of the trial judge. Judge Digges made plain for the Court in *Stanford v. District Title Insur.*, 260 Md. 550, 273 A.2d 190 (1971), that the judge is required, when dismissal is opposed, to balance certain interests prior to making the decision:

> "The decision to permit the redemption of a cause lost through delay involves subtle judgment, requiring the trial judge to balance the individual litigant's right to ultimately have his day in court against the public's paramount interest in insuring that all citizens can obtain a prompt resolution of conflicts while they still remain current." 260 Md. at 555, 273 A.2d at 192.

*Accord Langrall, Muir & Nopp'r v. Gladding*, 282 Md. 397, 384 A.2d 737 (1978).

Again, if such a balancing approach is applied here, the abuse of discretion seems clear. The interests of the public and juvenile are well recognized, on one hand, yet the State's misconduct, if any, is slight. In *State v. Frazier*, 298 Md. 422, 461–62, 470 A.2d 1269, 1289–90 (1984), we held that crowded court dockets may furnish "good cause" for trying a criminal case later than the 180–day deadline set by Code (1957, 1982 Repl. Vol., 1986 Cum.Supp.), Art. 27, § 591, and current Rule 4–271. In doing so, we recognized that overcrowded dockets are occasionally unavoidable.

Other jurisdictions appear to disagree on the question of whether dismissal amounts to an abuse of discretion where the sole basis is an attorney's or party's tardiness or failure to appear. Either directly or indirectly, however, most of the cases indicate that absent evidence of willfulness, other contumacy, a history of dilatoriness, prejudice to the opposing side, or similar circumstances, dismissal is too harsh a sanction. Recent cases in which orders of dismissal were reversed include *Dockery v. Hyatt*, 169 Cal.App.3d 830, 215 Cal.Rptr. 488 (1985) (trial court improperly dismissed action solely on ground that plaintiff's attorney failed to appear at trial setting conference; court rule required that other factors be weighed, such as prior diligence by plaintiff and prejudice to defendant); *Lifeguard Corp. v. U.S. Home*

*Corp.,* 429 So.2d 94 (Fla.Dist.Ct.App.1983) ("drastic" remedy of dismissal improper where failure to appear resulted from schedule misunderstanding and caused no prejudice to opponents); *Catogas v. Sapp,* 397 So.2d 1182 (Fla.Dist.Ct. App.1981) (dismissal is too severe a sanction for counsel's failure to appear on time where record reflects no willful or flagrant disregard of court's authority; court may discipline attorney by other appropriate means); *Comstock Co. v. LHG Inv. Co.,* 126 Mich.App. 408, 337 N.W.2d 82 (1983) (one hour delay due to counsel's erroneous belief that hearing was scheduled for 11:00 a.m. rather than 10:00 a.m. did not justify dismissal; appropriate remedy was imposition of costs); *Cook v. Haynes,* 92 Mich.App. 288, 284 N.W.2d 479 (1979); *Horobec v. Mueller,* 628 S.W.2d 942 (Mo.App.1982) ("Neither the parties nor research has disclosed a case in which the plaintiff's case was dismissed with prejudice for failure to diligently prosecute, when the plaintiff stood ready to try the case and was not chargeable with any past lack of diligence, solely upon the basis that plaintiff's counsel was tardy in appearing in court because of a conflicting court setting." *Id.* at 944.); *Esworthy v. Williams,* 100 Nev. 212, 678 P.2d 1149 (1984) (dismissal of URESA action where district attorney neglected to note hearing date on his calendar and thus failed to appear held an abuse of discretion); *Butler Service Co. v. Butler Service Group,* 66 N.C.App. 132, 310 S.E.2d 406 (1984) (under facts similar to those in the instant case, dismissal held improper; court observed that sanctions against the attorney, if warranted, would be "clearly more palatable"); [5] *accord State v. Bowring,* 490 A.2d 667 (Maine 1985).

Generally, although not universally, cases in which reviewing courts upheld dismissals based upon tardiness or failure to appear have involved more than a single derelic-

---

**5.** Depending upon the jurisdiction, the authority to dismiss in these cases exists inherently, by virtue of court rule, or both. In state criminal cases the authority to dismiss frequently stems from a state court rule patterned after Fed.R.Crim.P. 48(b), which permits dismissal of a criminal case for "unnecessary delay."

tion or the dismissal was without prejudice. In *Link v. Wabash R.R.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Court held in a four-three decision that the drawn-out history of the suit suggested that plaintiff was deliberately proceeding in a dilatory fashion. *See also, e.g., Jones v. Rich's Div. of Federated Dep't Stores*, 170 Ga.App. 687, 317 S.E.2d 668 (1984) (counsel, who failed to contact the court concerning his absence, had acted similarly on prior occasions); *Dileo v. Bernstein*, 488 So.2d 1274 (La.Ct. App.1986) (in upholding dismissal without prejudice based on tardiness of some 30 minutes, court noted that plaintiff was able to refile the suit); *Westbrook v. Wallace*, 478 A.2d 687 (Maine 1984) (no abuse of discretion to dismiss for attorney's failure to appear where evidence indicated attorney's claimed illness was minimal and was advanced as mere pretext for avoiding trial before a particular justice); *Pembaur v. Leis*, 1 Ohio St.3d 89, 437 N.E.2d 1199 (1982) (dismissal upheld where plaintiff voluntarily and unexplainedly failed to appear at hearing in spite of court's order that he appear). *But cf. Vanhook v. Stanford-Lincoln Cty. Rescue Squad*, 678 S.W.2d 797 (Ky.1984) (attorney's negligent failure to attend 3–day trial imputable to clients).

The State was never given an opportunity here to explain the delay. It would appear that the assistant State's attorney to whom the petition against Darryl D. was assigned had too heavy an assignment for that particular morning. Be that as it may, at the very time that the juvenile master was announcing that she was dismissing the action, which was not in her power, an assistant State's attorney was standing before her indicating that she was ready to proceed with trial. Under the circumstances of this case, we hold that the juvenile court judge abused his discretion in adopting the recommendation of the master and dismissing the cause. Litigants, in this case the public as represented by the State, should not be made to suffer for derelictions, if any, of their counsel in circumstances such as this.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.