938 A.2d 826

**In re KEVIN E.**

**No. 27 Sept. Term 2007.**

Court of Appeals of Maryland.

Jan. 3, 2008.

Raker, J., dissented and filed opinion.

Deborah S. Richardson, Assistant Public Defender (Nancy S. Forster, Public Defender, of Baltimore), on brief, for appellant.

Robert Taylor, Jr., Assistant Attorney General (Douglas F. Gansler, Attorney General of Maryland, of Baltimore), on brief, for appellee.

Argued before BELL, C.J., RAKER, HARRELL, BATTAGLIA, GREENE, ALAN M. WILNER (Retired, Specially Assigned), and DALE R. CATHELL (Retired, Specially Assigned), JJ.

GREENE, J.

■ "A trial may be held although a defendant elects to present no evidence. Similarly, a trial may be held notwithstanding the refusal of the State to participate."

*Daff v. State,* 317 Md. 678, 689, 566 A.2d 120, 126 (1989). In this case, we are asked to decide whether principles of double

jeopardy apply to bar any further proceedings to adjudicate appellant, Kevin E., a juvenile, a delinquent for the offenses alleged in this case. We shall hold that on the basis of Maryland common law double jeopardy principles, appellant's adjudication on the charges was held, as scheduled, notwithstanding the State's failure to present any evidence at the adjudicatory hearing.[1] Based upon the substance of what occurred at that hearing and the juvenile court judge's adoption of the master's recommendation, we shall hold that appellant was "acquitted" by reason of the insufficiency of the State's evidence. Accordingly, any further adjudication of the alleged charges is barred.

## Background

In the present case, appellant appeared before a juvenile court master for purposes of an adjudicatory hearing on charges of violating the controlled dangerous substance laws. On the date scheduled for adjudication of the charges, the State requested a postponement and the master assigned to hear the juvenile delinquency matter denied that request. The prosecutor handling the case then said, "[t]he State rests, Your Honor." Defense Counsel thereafter moved to dismiss the delinquency petition and the master granted the motion, issuing the following report and recommendation[2] of dismissal

---

1. This decision is based upon Maryland non-constitutional law and procedure. *See Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983); *Parker v. State,* 402 Md. 372, 398, 936 A.2d 862, 878 (2007) (explaining that "[t]his is a very limited decision based exclusively upon Maryland non-constitutional law and procedure"). An acquittal, even when granted in error, constitutes an acquittal for double jeopardy purposes. *See also Daff v. State,* 317 Md. 678, 688–89, 566 A.2d 120, 125–26 (1989) (noting that whether jeopardy has attached, in the sense of the presentation of evidence or the swearing of witnesses, is not relevant to the finality of an acquittal under common law principles); *Farrell v. State,* 364 Md. 499, 510, 774 A.2d 387, 393 (2001) (holding that under Maryland common law principles an acquittal is final where the court had jurisdiction over the subject matter and the defendant, and, the trial court intentionally rendered not guilty verdicts).

2. The master's Report and Recommendation was made part of a "form" Order. In addition to identifying the individual charges recom-

to the Circuit Court for Baltimore City, sitting as a juvenile court: *"State notes that necessary police officer not present (spoke to him earlier today) and unable to appear for proceeding. State presents no further evidence and rests. Counsel for respondent orally Motions for dismissal of petition."* (Emphasis added.)

On the same day that the master submitted his report and recommendation, June 28, 2006, the juvenile court judge signed an Order, adopting the master's recommendation. Although the State filed timely exceptions to the master's proposed dismissal, the Circuit Court did not conduct an exceptions hearing until July 12, 2006, approximately two weeks after the juvenile court judge had signed the Order adopting the master's recommendation of dismissal. Notwithstanding the action taken by the Circuit Court, another judge conducted an exceptions hearing,[3] sustained the State's exceptions and ordered another adjudication on the petition. Appellant objected on the grounds of double jeopardy.

Thereafter, on September 7, the State called the case for a hearing on the appellant's motion "to dismiss the case and in the alternative, to continu[e] the stay if [t]he request to dismiss is not granted." Again the appellant argued that when the master entered a dismissal of the case, the juvenile was, in effect, acquitted of the charges and the case should have ended. The State's position during the argument on the

---

mended for dismissal, there is a notation in the recommended Order that "[t]he above case(s) were assigned for a hearing and a hearing was unable to be held. The Court dismissed the case(s)."

3. Pursuant to Md. Rule 11–111(c), the State filed exceptions to the master's findings and recommendations. At the exceptions hearing, the State pointed out that on June 28, although, the State was ready to go forward with adjudication of the case, it did not actually call any witnesses to the stand. Because an essential state's witness was not available for trial, the State asked for a postponement and the master denied that request. The appellant responded, acknowledging that the State had failed to put on any testimony, nonetheless, in effect had tried its case and that any further adjudication of the case would constitute double jeopardy. In sustaining the exceptions, the judge determined that because the State did not put on any witnesses at the prior adjudicatory hearing, "[t]he case will be re-set for adjudication."

motion to dismiss was that, "the State would stipulate that jeopardy attached, but its all, even at the exception level, its all the same proceeding." According to the State, there was one continuous proceeding held in the Circuit Court as to Kevin E. After the master recommended a disposition of the case, a juvenile judge issued a final ruling adopting the master's recommendation and another juvenile judge conducted the exceptions hearing. In denying appellant's motion to dismiss, the judge concluded that the master had no authority to deny or grant a postponement and, in denying the State's request for a continuance the master violated the court's policy on postponements. Although the exceptions judge and the motions judge were the same individual, at both proceedings, the court failed to address either the significance or the status of the Circuit Court's previous order, dated June 28, which order adopted the master's findings and recommendations.

Subsequently, appellant appealed to the Court of Special Appeals based upon the motion judge's ruling of September 7, which denied appellant's motion to dismiss and ordered a new adjudicatory hearing. In addition, appellant requested a stay of proceedings in the juvenile court pending resolution of the appeal. The parties agreed that a stay pending resolution of the appeal was proper. Prior to any further proceedings in the intermediate appellate court, we granted certiorari, on our own motion. *In re Kevin E.*, 399 Md. 592, 925 A.2d 632 (2007).

### Discussion

█ The State moves to dismiss this appeal, pursuant to Md. Rule 8–602(a)(*l*),[4] on the ground that it is not permitted by law. According to the State, the appeal is premature as it stems from a ruling on a postponement order which is not a final judgment or an immediately appealable order. The

---

4. In its brief the State cited Md. Rule 8–601(a). This is an obvious error because that Rule pertains to dismissal of an appeal by the appellant. The State must have intended to cite Rule 8–602(a)(1) which would include untimely appeals.

State concedes that an appeal may be taken to prevent a second trial from occurring once jeopardy has attached. Before this Court, however, the State asserts that jeopardy did not attach because the prosecutor produced no evidence, and no competent tribunal entered deliberate findings of fact amounting to an acquittal.

Conversely, appellant contends that he does not "appeal from an order of the circuit court rejecting the master's denial of a continuance." To the contrary, appellant argues that he "has properly alleged that the proceeding below resulted in an acquittal for the purposes of double jeopardy." Thus, according to appellant, the State seeks to disguise as a motion to dismiss its substantive contention that jeopardy never attached. We reject the State's assertion that the appeal is premature and that jeopardy never attached or that there was no substantive acquittal. As we shall explain, the merits of appellant's claim of double jeopardy are properly before us; therefore, the motion to dismiss is denied.

■■■ In the case at bar, the juvenile master's recommendation to dismiss the petition on June 28, 2006, was approved by a juvenile court judge that same day. In our view, the judge's order constituted a final order on the merits irrespective of any double jeopardy implications as to the charges against Kevin E. for violation of the controlled dangerous substance laws. The State was entitled to a hearing on the record as to the exceptions it filed and to supplement the record by additional evidence that the court determined was relevant and to which the parties raised no objection. *Forster v. Hargadon,* 398 Md. 298, 299–301, 920 A.2d 1049, 1049–52 (2007); Md. Rule 11–111(c) [5] and Md.Code (1974, 2006 Repl.

---

5. Rule 11–111 states in relevant part:

 c. **Review by court if exceptions filed.** Any party may file exceptions to the master's proposed findings, conclusions, recommendations or proposed orders. Exceptions shall be in writing, filed with the clerk within five days after the master's report is served upon the party, and shall specify those items to which the party excepts, and whether the hearing is to be de novo or on the record.

Vol.), § 3–807(c)(3)[6] of the Courts & Judicial Proceedings Article ("CJP"). In that regard, clearly, the juvenile court judge erred in adopting the master's recommendation prior to the expiration of the five days mandated by Md. Rule 11–111 and CJP § 3–807(c). *See In re Kaela C.,* 394 Md. 432, 906 A.2d 915 (2006) (holding that the Circuit Court erred in adopting the master's recommendation and dismissing the CINA petitions). Notwithstanding the erroneous ruling, it is well settled in this jurisdiction that an acquittal, even when granted in error, constitutes an acquittal for double jeopardy purposes. *Pugh v. State,* 271 Md. 701, 707, 319 A.2d 542, 545 (1974). Thus, the essential issue in this case rests on the merit of whether the facts establish single jeopardy. *See Giddins v. State,* 163 Md.App. 322, 328, 878 A.2d 687, 691 (2005), *aff'd,* 393 Md. 1, 899 A.2d 139 (2006) (noting that "before we can even consider double jeopardy, we must first establish single jeopardy").

A State may not put a defendant in jeopardy twice for the same offense. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). This means that "[a]n acquittal effectively bars retrial of a defendant because double jeopardy principles 'forbid[] a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.'" *Giddins v. State,* 393 Md. 1, 18, 899 A.2d 139, 149 (2006). For purposes of the double jeopardy prohibition, a juvenile pro-

---

Upon the filing of the exceptions, a prompt hearing shall be scheduled on the exceptions. An excepting party other than the State may elect a hearing de novo or a hearing on the record. If the State is the excepting party, the hearing shall be on the record, supplemented by such additional evidence as the judge considers relevant and to which the parties raise no objection. In either case the hearing shall be limited to those matters to which exceptions have been taken.

6. Section 3–807 states in relevant part:

(c)(3) If the State is the excepting party in proceedings involving juvenile delinquency, the hearing shall be on the record, supplemented by additional evidence as the judge considers relevant and to which the parties raise no objection.

ceeding is treated as a criminal proceeding. *In re Michael W.*, 367 Md. 181, 185, 786 A.2d 684, 687 (2001). Double jeopardy principles preclude, among other things, further trial proceedings after an acquittal or equivalent adjudication on the merits in favor of the accused. *State v. Taylor*, 371 Md. 617, 630–33, 810 A.2d 964, 971–73 (2002); *In re Mark R.*, 294 Md. 244, 261, 449 A.2d 393, 403 (1982) (recognizing that double jeopardy applies to juvenile adjudicatory hearings conducted by masters that end in unconsented to and unnecessary mistrials, otherwise the State could obtain even more than a forbidden "second crack").

 Pursuant to common law principles, "defendants who have been indicted and acquitted of an offense may interpose the plea of autrefois acquit,[7] if later charged with the same offense." *Giddins v. State*, 393 Md. at 19, 899 A.2d at 149. The plea of *autrefois acquit* insulates a verdict and ensures that "the *verdict of acquittal can never afterward,* ... *in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury.*" *State v. Shields*, 49 Md. 301, 303 (1878,) (emphasis added); *Giddins*, 393 Md. at 26, 899 A.2d at 153. We have said that a successful plea of *autrefois acquit* depends on whether the court has ruled on the evidence. *Id.* at 20, 899 A.2d at 150. In other words, if the trial judge "evaluated the [State's] evidence and determined that it was legally insufficient to sustain a conviction," then double jeopardy principles are implicated despite the trial judge's characterization of the action. *Smith v. Massachusetts*, 543 U.S. 462, 468, 125 S.Ct. 1129, 1134, 160 L.Ed.2d 914, 923 (2005) (defining an acquittal as the "resolution, corrector not, of some or all of the factual elements of the offense charged").

---

7. We pointed out in *State v. Taylor*, 371 Md. 617, 630, 810 A.2d 964, 971 (2002), that "[t]he principle of double jeopardy encompasses three interrelated pleas at common law: *autrefois acquit, autrefois convict,* and *pardon.*" Only the principle of *autrefois acquit* is relevant to our discussion.

In *Taylor*, we recognized that double jeopardy principles are invoked only when a dismissal or an equivalent order is based on the evidence. *Taylor*, 371 Md. at 654, 810 A.2d at 989. In *Daff v. State*, 317 Md. 678, 689–90, 566 A.2d 120, 126 (1989), we held that the trial court's entry of a finding of not guilty based upon the evidence constituted an acquittal barring retrial. *See also Wynn v. State*, 388 Md. 423, 446, 879 A.2d 1097, 1110 (2005) (Wilner, J., Battaglia, J., and Greene, J. concurring) (recognizing that "when a case is properly called for trial, the State is put to the burden of producing legally sufficient evidence to convict, and if it failed to produce such evidence, for whatever reason, acquittal is mandated"); *Farrell v. State*, 364 Md. 499, 509, 774 A.2d 387, 392–93 (2001) (holding that procedural errors do not affect the efficacy of an acquittal for jeopardy purposes and that the "not guilty" verdict need not be followed by entry of the judgment on the docket to bar subsequent prosecution).

In *Taylor*, we said:

[t]he purposes underlying the double jeopardy principles include "protect[ing] the integrity of a final judgment," *United States v. Scott*, 437 U.S. 82, 92, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65, 74 (1978), assuring that the State "with all its resources and power" is not "allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).

*Taylor*, 371 Md. 617, 630, 810 A.2d 964, 971 (2002). In the case of *In re Mark R.*, we acknowledged that one of the chief purposes of the double jeopardy principle is protection against harassment and abuse; and, if double jeopardy principles did not apply to adjudicatory hearings "[t]here could be innumerable adjudicatory hearings before masters as long as masters were willing to abort hearings because of deficiencies in the State's case." *In re Mark R.*, 294 Md. at 261, 449 A.2d at 403.

*See also Burks v. U.S.,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1, 9–10 (1978) (noting that the prohibition against successive trials bars "the prosecution [from] another opportunity to supply evidence which it failed to muster in the first proceeding").

 In *Pugh v. State,* 271 Md. 701, 319 A.2d 542, (1974), we said that when the trial judges's action "represent[s] an intended decision based upon the judge's view that the prosecution had failed to prove [its case]," the action is an acquittal. We pointed out that "it ma[kes] no difference whether the acquittal [is] based on a mistake of law or a mistake of fact," *Id.* at 705, 319 A.2d at 544. Thus, in determining whether the court granted an acquittal, our focus is on the substance of the trial judge's actions. *United States v. Jorn,* 400 U.S. 470, 478 n. 7, 91 S.Ct. 547, 553 n. 7, 27 L.Ed.2d 543, 552 n. 7 (1971) (noting that "the trial judge's characterization of his own action cannot control the classification of the action"); *Wright v. State,* 307 Md. 552, 569–70, 515 A.2d 1157, 1166 (1986) (recognizing that "in determining the applicability of the double jeopardy prohibition in a particular situation, a court must primarily examine the substance of what occurred and not simply the procedural form").

In *Farrell v. State,* 364 Md. 499, 509, 774 A.2d 387, 393 (2001), the defendant was charged with speeding and negligent driving. He appeared for trial and entered a plea of "not guilty." The State did not call any witnesses and the trial judge entered a verdict of "not guilty," and entered judgment to that effect. *Farrell,* 364 Md. at 501, 774 A.2d at 388. Thereafter, the State filed a criminal information charging the defendant with the same offenses, even though he had been acquitted of those charges. Farrell challenged, on the grounds of double jeopardy, the State's right to initiate new proceedings against him. *Farrell,* 364 Md. at 502, 774 A.2d at 388. Ultimately, we held that the trial court had subject matter jurisdiction as well as jurisdiction over the defendant and that the verdict of "not guilty" was rendered intentionally

by the trial judge. Accordingly, this Court concluded that the acquittals were final and that the State was precluded, under double jeopardy principles, from instituting a new prosecution for the same offenses. *Id.* at 510, 774 A.2d at 393. This Court has said that, ordinarily, jeopardy attaches at a jury trial when the jury is empaneled and sworn, and at a bench trial when the judge begins to hear or receive evidence. *Blondes v. State*, 273 Md. 435, 444–45, 330 A.2d 169, 173–74 (1975). We explained, however, in *Farrell* that whether jeopardy has "attached, in the sense of the presentation of evidence or swearing of witnesses, has no relevance to the finality of an acquittal under common law principles." *Farrell*, 364 Md. at 509–10, 774 A.2d at 393.

In *Daff v. State*, 317 Md. 678, 681, 566 A.2d 120, 121 (1989), the defendant appeared for trial on his scheduled trial date. The prosecutor requested a postponement because the State's witnesses were not present. The trial judge denied the request. After the prosecutor refused to enter a nolle prosequi, Daff tendered a plea of "not guilty." *Daff*, 317 Md. at 682, 566 A.2d at 122. The trial judge entered a finding of "not guilty" because the State failed to produce any evidence. This Court, on appeal, held that on the basis of common law double jeopardy principles the State was not permitted to retry the defendant. *Id.* at 689–90, 566 A.2d at 125–26. Interestingly, the State in *Daff* contended, as it does here, that because no witness was sworn and no evidence was received, jeopardy did not attach to the initial proceeding. Although we decided *Daff* on the basis of the Maryland common law double jeopardy principle of *autrefois acquit*, in response to the contention that jeopardy had not attached, we explained that jeopardy had attached even though the State presented no evidence. The Court said:

> The defendant was specifically 'put to trial before the trier of facts' and 'subjected to the risk of conviction.' The State was given an opportunity to present evidence at the trial. Had that evidence been sufficient, the defendant would have

been convicted. The trial ended abruptly only because the State introduced no evidence.

*Id.* at 689, 566 A.2d at 125.

As to the common law plea of *autrefois acquit,* this Court pointed out that

[i]t made no difference that the State's evidence may have been woefully deficient at the trial. Indeed, one may assume that the acquittal usually reflected the inadequacy of the State's case. We think the defense is no less available when the State's case has been completely deficient than when the State's case has been only partially deficient. A trial may be held although a defendant elects to present no evidence. Similarly, a trial may be held notwithstanding the refusal of the State to participate. Daff's trial was held as scheduled, and he was acquitted by reason of the insufficiency of the State's evidence. Retrial is barred.

*Id.* at 689–90, 566 A.2d at 126.

In the present case, the State contends that double jeopardy principles do not prevent the State from holding another adjudicatory hearing because a circuit court judge upheld the State's exceptions to the master's refusal to grant a continuance. The State, in making this argument, overlooks that its exceptions to the master's actions were sustained, but only after a judge of the Circuit Court had previously adopted the master's recommendation of dismissal. We agree with the State's contention that the "findings, conclusions and recommendations of a master do not constitute orders or final action of the court." *See* Md. Rule 11–111(a). In addition, we agree that the State is entitled to take exceptions from the ruling of a juvenile master. *See* Md. Rule 11–111(c) and CJP § 3–807. The essential flaw in the State's argument, however, is that the Circuit Court's adoption of the master's recommendation, in effect, nullified the State's exceptions because the judge's order, rightly or wrongly, became the final order of the court.

As we pointed out in *Taylor* and *Daff,* one of the purposes underlying double jeopardy is "protecting the integrity of a final judgment." *Taylor,* 371 Md. at 630, 810 A.2d at

971. Once the juvenile court judge adopted the master's recommendation to dismiss the petition, the order of dismissal became a final judgment of the court. *See Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978) (noting that regardless of the presence or absence of exceptions, the circuit court judge is empowered to accept, modify, or reject the master's proposals).

■■■■ As to the substance of the master's recommendation and the juvenile court's adoption of that recommendation, the dismissal was the equivalent of an acquittal on the grounds of insufficiency of evidence. The State requested a continuance of the adjudicatory hearing on the grounds that one of its witnesses, a police officer, was unavailable because he was involved in a pending raid. Other witnesses for the State, the chemist and another police officer were available to testify. Appellant informed the court that he had been in court since 9:30 a.m. and had heard at 11:00 a.m. for the first time that the officer was unavailable. The following colloquy ensued:

> THE COURT: Yeah, Southern District. All right. Well this does not fall, your request that is, does not fall within the parameters of the current postponement policy, so I will deny the State's request for a postponement.
>
> [PROSECUTOR]: The State rests, Your Honor.
>
> [DEFENSE COUNSEL]: Your Honor, we, move to dismiss at this time.
>
> THE COURT: All right. Your motion is granted. The petition is dismissed.
>
> [DEFENSE COUNSEL]: Thank you.

At the moment that the master denied the State's request for a continuance, it had other options short of presenting no evidence and resting its case. The prosecutor could have asked the court to recess and allow the juvenile court judge or the administrative judge to review the denial of a postponement. In addition, the State could have called the two witnesses present in court to testify and at the end of that testimony requested another continuance long enough to secure the appearance of the missing witness. But, to allow the

State to rest its case and then proceed with another adjudicatory hearing at its convenience would stifle the court's ability to manage its dockets and permit the State to circumvent the effect of having its continuance denied.

Despite the order of the juvenile court dismissing the charges, another judge of the juvenile court held a hearing on the State's exceptions. The defense filed a motion to dismiss on the grounds of double jeopardy. The second judge concluded that the master had no authority to deny the postponement, therefore, according to the court, the adjudicatory proceedings that took place before the master, culminating in a recommendation for dismissal, resulted from unauthorized acts of the master. The exceptions judge relied upon the case of *In re Darryl D.*, 308 Md. 475, 520 A.2d 712 (1987); however, that case is inapposite for several reasons.

First, *In re Darryl D.* involved an adjudicatory hearing that was scheduled before the juvenile master, but the hearing never took place. When the master was ready to proceed with the case, the assigned prosecutor was involved in other proceedings. There was no dispute that the prosecutor was tardy in appearing in court to present his case. Later in the day, when a substitute prosecutor appeared in court with witnesses to present the case, the master granted defense counsel's motion and dismissed the case for lack of timely prosecution. *Id.* at 475–78, 520 A.2d at 712–13. The State filed exceptions to the master's report and after a hearing the Circuit Court for Baltimore City denied the exceptions. *Id.* On appeal to the Court of Special Appeals, the intermediate appellate court affirmed, holding that the summary dismissal was improper. We granted *certiorari* and affirmed the intermediate appellate court, but on different grounds. *Id.* Specifically, this Court held that "the juvenile court judge abused his discretion in adopting the recommendation of the master and dismissing the cause." *Id.* at 485, 520 A.2d at 717. We reasoned that

[t]he State was never given an opportunity here to explain the delay. It would appear that the assistant State's attorney to whom the petition against Darryl D. was assigned

had too heavy an assignment for that particular morning. Be that as it may, at the very time that the juvenile master was announcing that she was dismissing the action, which was not in her power, an assistant State's attorney was standing before her indicating that she was ready to proceed with the trial.

*Id.*

This Court did not decide the question of whether the circuit court had the inherent power to dismiss a juvenile cause. The Court assumed, without deciding, that the circuit court had the power to dismiss a juvenile petition alleging delinquency, for lack of prosecution, even though Title 2 of the Maryland Rules does not apply to juvenile causes, and there is no specific statutory authorization for such dismissals. *Id.* at 479, 520 A.2d at 714. Instead, we addressed the narrow issue pertaining to the circuit court judge's abuse of discretion. Thus, *In re Darryl* does not support the State's position in this case, that the juvenile master, here, overstepped his authority.

The State also contends that "this case is procedurally similar" to *In re Roneika S.*, 173 Md.App. 577, 920 A.2d 496 (2007). According to the State, we should conclude that double jeopardy principles do not apply because, as in *Roneika*, "the court's dismissal of the juvenile petition was not substantively an acquittal, [and] jeopardy did not attach to that decision." *In re Roneika S.*, 173 Md.App. at 586, 920 A.2d at 501. In *Roneika*, the Court of Special Appeals held that the circuit court judge's determination that the juvenile delinquency petition was not adequate on its face did not implicate double jeopardy principles because the judge's determination was not based upon the legal sufficiency of the evidence. *Id.* The central issue in *Roneika* was the adequacy of the juvenile delinquency petition under the Due Process Clause of the Fourteenth Amendment, Article 21 of the Declaration of Rights, CJP § 3–8A–13(a), and Md. Rule 1 1–103(c). The issue in the case at bar relates to the sufficiency of the evidence on the record at the point when the State rested its

case. The dismissal, in this case, unlike in *Roneika*, had nothing to do with the adequacy of the charging document.

To be sure, the facts of this case are most like those in *Daff*. Considering the substance of what occurred before the master, a trial was held. The trial ended abruptly because the State failed to present any evidence. When the motion to dismiss was made, there was no evidence before the court. The master granted the motion to dismiss and recommended that the juvenile court judge adopt that recommendation. Similar to the facts in *Daff* the State's evidence was woefully deficient at the trial. Like *Daff* we can assume that the dismissal reflected the inadequacy of the State's case. Not unlike the facts in *Daff* the trial was held as scheduled, although it ended abruptly because the State failed to produce any witnesses. Further, like *Daff*, appellant's dismissal was the equivalent of an acquittal by reason of the insufficiency of the State's evidence. Accordingly, any retrial is barred.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY, SITTING AS THE JUVENILE COURT IS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE JUVENILE PETITION. MAYOR AND CITY COUNCIL OF BALTIMORE TO PAY THE COSTS.**

RAKER, J., Dissents.

RAKER, J., dissenting:

I respectfully dissent. In response to the merits of the case before this Court, in my view, jeopardy never attached in this case, and therefore, double jeopardy principles do not bar a delinquency proceeding in the matter of Kevin E. No witness was ever called before the juvenile master, no evidence was ever received, and there was no finding amounting to an acquittal. Under the Fifth Amendment to the United States Constitution or Maryland common law, jeopardy never attached.[1]

---

**1.** Procedurally, there could not be an adjudicatory hearing in this case because there does not appear to be a viable petition before the Circuit

Assuming, as does the majority, that a "live" delinquency petition somehow exists in this case, I turn to the merits of the argument before the Court. Appellant's argument that jeopardy attached at the June 28, 2006 hearing when Judge Hargadon dismissed the petition is wrong. Appellant argues that a second adjudication of a juvenile petition of delinquency is barred by double jeopardy principles when at the first adjudication, the State was denied a postponement, "rested" after putting on no evidence, and the master recommended that the petition be dismissed.

I do not agree that the State would be barred by jeopardy principles from bringing Kevin E. to trial.[2] Under the federal

---

Court, although the record is less than clear as to exactly what transpired in the Circuit Court. There is no docket entry or court order vacating Judge Hargadon's order dismissing the case. Accordingly, it is difficult to understand how an adjudicatory proceeding could be held when the petition, which had been dismissed, was never reinstated. Somehow, without any indication as to the disposition of the Order of dismissal, a hearing on the State's exception was set before Judge Young of the Circuit Court. Judge Young sustained the State's exceptions and rescheduled the adjudicatory hearing. All parties seemed to assume that there *was* a petition pending in the Circuit Court.

2. The majority states that "[t]he State's position during the argument on the motion to dismiss was that, 'the State would stipulate that jeopardy attached, but its all, even at the exception level, its all the same proceeding.' " The quote is taken out of context and is not any evidence that the State is taking inconsistent positions on this issue. The State's comment was made in the course of the discussion with the trial court at to double jeopardy generally and juveniles, and particularly in the context of *Swisher v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705 (1978). The colloquy proceeded as follows:

"Your Honor, I believe that, that *Swisher State's Attorney v. Brady*, 438 U.S. 204, 98 S.Ct. 2699, 57 L.Ed.2d 705, has already addressed this issue in 1978 and has ruled that a Master's proposals of recommendation need to be finalized by a judge, and it's all part of a single proceeding. Therefore, yes, the State would stipulate that jeopardy attached, but it's all, even at the exception level, it's all part of the same proceeding. This case, there is, there hasn't been a second proceeding, and that involved an adult case with two judges, not a master and a judge. So that would not—."

In *Swisher v. Brady*, the Supreme Court stated the question presented and holding as follows:

"[T]he narrow question here is whether the State in filing exceptions to a master's proposals, pursuant to Rule 911, thereby '[requires] an

Constitution, "jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of facts, whether the trier be a jury or a judge.'" *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975) (internal citation omitted). Jeopardy never attached in this matter and therefore, Kevin E. was never in jeopardy. The State never presented any evidence, and of course, since the proceeding was a juvenile matter, a jury was never sworn.

The Fifth Amendment to the United States Constitution's double jeopardy bar applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). In a jury trial, jeopardy attaches when the jury is empaneled and sworn. *Downum v. United States*, 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). In a bench trial, jeopardy attaches when the court first hears evidence. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). Under Maryland common law principles and the plea of *autrefois acquit*, "the essential inquiry is whether there has been a ruling on the evidence...." *Giddins v. State*, 393 Md. 1, 20, 899 A.2d 139, 150 (2006). *See State v. Morton*, 971 S.W.2d 335, 339 (Mo.App.1998) (noting "[i]n pre-trial proceedings, jeopardy does not attach when an indictment [or infor-

---

accused to stand trial' a second time. We hold that it does not. Maryland has created a system with Rule 911 in which an accused juvenile is subjected to a single proceeding which begins with a master's hearing and culminates with an adjudication by a judge." *Swisher*, 438 U.S. at 215, 98 S.Ct. at 2706. The Supreme Court quoted *Breed v. Jones*, 421 U.S. 519, 529, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975):

"We believe it is simply too late in the day to conclude ... that a juvenile is not put in jeopardy at a proceeding whose object is to determine whether he has committed acts that violate a criminal law and whose potential consequences include both the stigma inherent in such a determination and the deprivation of liberty for many years."

The State has always maintained that jeopardy did not attach because no evidence was presented.

mation] is dismissed so long as the dismissal was not an adjudication of defendant's guilt or innocence based on extrinsic evidence outside the indictment or information such as stipulated facts or evidentiary facts submitted to the court for its review"). In this case, there has been no evidence received and therefore, no ruling on the evidence. Double jeopardy plays no role in this proceeding.

If appellant's theory is that in a juvenile proceeding, a recommendation of dismissal is the equivalent of a verdict of "not guilty" and therefore an acquittal, the master's recommendation to the Circuit Court judge that the case be dismissed was simply that of a *recommendation,* and not an order or final action of court. Rule 11–111(a)(2) states, in pertinent part, as follows: "The findings, conclusions and recommendations of a master do not constitute orders or final action of the court." Md. Rule 11–111(a)(2) (2006). As this Court stated in *In Re Darryl D.,* 308 Md. 475, 477 n. 2, 520 A.2d 712, 713 n. 2 (1987), a master "ha[s] but the power to recommend to the juvenile court judge, because ... 'a juvenile master is entrusted with no part of the judicial power of this State.' "

Appellant's argument that after the State rested at the June 28, 2006 hearing, the defense then made the equivalent of a motion for judgment of acquittal, which the master recommended be granted, is equally unavailing. His argument that the master's ruling "was the equivalent of an acquittal" is simply wrong. Of course, "what constitutes an 'acquittal' is not to be controlled by the form of the judge's action." *Martin Linen Supply Co.,* 430 U.S. at 571, 97 S.Ct. at 1354. The test is "whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged." *Id.* at 571, 97 S.Ct. at 1355. First, a *recommendation* of a dismissal is not a dismissal. It is merely a recommendation. Second, barring prior receipt of evidence, a dismissal is not an acquittal or a not guilty finding. In this case, there has been no

factual resolution in favor of Kevin E. on one or more of the elements of the offense charged. Had there been as much, the ruling and the dismissal could be the functional equivalent of a judgment of acquittal. *See Martin Linen Supply,* 430 U.S. at 571, 97 S.Ct. at 1355. In juvenile proceedings, the equivalent of a "not guilty" verdict is a finding of "not involved."

For the principles of double jeopardy to apply to the second hearing, jeopardy must have attached at some time prior to that hearing. If appellant's theory is that jeopardy attached when the Circuit Court signed the order of dismissal because the dismissal was the equivalent of an acquittal, he is mistaken. Inasmuch as the Circuit Court judge did not state that the dismissal was with prejudice, the State, ordinarily, would be free, subject to constitutional and statutory time limitations, to re-file the petition. *See, e.g.,* § 3–8A–13(b) of the Courts and Judicial Proceedings Article, Md.Code (1974, 2006 Repl.Vol.) (providing statutory time limitations for the filing of petitions in juvenile causes). Assuming *arguendo* that there was no time bar to the re-filing of the petition, trial would not be barred by double jeopardy. A dismissal without prejudice in this context does not entail any ruling on the evidence or an adjudication of the merits of the case. It is therefore wholly unlike an acquittal. "There can be no double jeopardy ... until there has been initial jeopardy." *Payne v. State,* 73 Md.App. 749, 752, 536 A.2d 158, 160 (1988).