988 A.2d 1011

**Karl Lymont THOMPSON**

v.

**STATE of Maryland.**

**No. 126 Sept.Term, 2008.**

Court of Appeals of Maryland.

Feb. 17, 2010.

498

Meaghan McLaine, Assigned Public Defender, O'Melveny & Myers, LLP, Washington DC; Nancy S. Forster, Public Defender, Baltimore, MD), on brief, for Petitioner.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

MURPHY, Judge.

In the Circuit Court for Baltimore City, a jury convicted Karl Lymont Thompson, Petitioner, of second-degree rape and related offenses. The State's evidence, which included the victim's testimony, was sufficient to establish that Petitioner committed the rape in 1986 and committed a third-degree sex offense in 1983. Petitioner does not argue to the contrary. He does argue, however, that he is entitled to a new trial. After the Court of Special Appeals affirmed Petitioner's convictions in *Thompson v. State*, 181 Md.App. 74, 955 A.2d 802 (2008), he filed a petition for *writ of certiorari* in which he presented this Court with two questions:

I. MAY EVIDENCE OF THE [PETITIONER'S] UN-CHARGED JUVENILE CONDUCT BE ADMITTED IN A CRIMINAL PROSECUTION GIVEN THAT JUVENILE ADJUDICATIONS AND THE EVIDENCE THEREIN ARE INADMISSIBLE?

II. DOES AMENDING THE INDICTMENT TO CHARGE THAT A CRIME OCCURRED DURING A DIFFERENT TIME–FRAME AND AT A DIFFERENT LOCATION CHANGE THE CHARACTER OF THE SEXUAL OFFENSE WHEN MULTIPLE OFFENSES ARE ALLEGED?

We granted the petition. 406 Md. 744, 962 A.2d 371 (2008). For the reasons that follow, we answer "yes" to the first question and "no" to the second. We shall therefore affirm the judgment of the Court of Special Appeals.

### Background

The record shows that Petitioner was 40 years of age when the conduct at issue was reported to a law enforcement officer. The Court of Special Appeals provided the following factual background:

On May 10, 2005, [the victim] then thirty-one years of age and a resident of San Diego, California, spoke by telephone with Detective Edward Scott Jones of the Baltimore City Police Department, informing him that, beginning in 1978,

when she was approximately five years old, until 1986, when she was thirteen, she had been sexually abused by her uncle, [Petitioner], on numerous occasions. She stated that she had not previously reported any of these incidents because she had been told by a mental health counselor that "it was too late" to do so.

\* \* \*

At trial, the court permitted [the victim] to testify about five specific instances of sexual abuse. The first of the five incidents occurred in the summer of 1978, at the Lynview home, when [the victim] was "approximately five" years old and appellant was fourteen years old. Because of appellant's juvenile status at that time, the State never charged appellant with any crimes associated with this incident. The second incident took place during a school vacation in 1983, when [the victim] was ten years old and appellant was nineteen and an adult. The third and fourth incidents happened during the summers of 1984 and 1985 at her grandparents' Hampstead home, when [the victim] was about eleven years of age and appellant was twenty. The charges stemming from these incidents were dismissed during trial for lack of jurisdiction. The fifth incident occurred in November 1986, when [the victim] was thirteen and was staying at the Goodnow Road apartment of appellant, who was then twenty-two.

\* \* \*

With respect to the 1986 incident, [the victim] testified that it occurred while she was visiting appellant at his apartment on Goodnow Road in Baltimore City, during her Thanksgiving school break. Appellant was then living at that address with his girlfriend, Stephanie Perry. [The victim] recalled that one evening, before appellant left for work, he provided her with a shirt to sleep in and told her she could share a bed with Ms. Perry. She then recounted how later that night, when appellant returned home, he "got into bed" with her and Ms. Perry and how she later awoke to find "his penis inside of [her]," while Ms. Perry slept.

\* \* \*

Over appellant's objection, the circuit court permitted [the victim] to testify that she had been sexually abused by appellant as early as 1978, at her grandparents' Lynview home, when she was "[a]pproximately five" and appellant was fourteen years old. Although appellant was never charged, either as a juvenile or an adult, with any offenses stemming from this incident, the court ruled that such testimony was admissible under Maryland Rule 5–404(b). It reasoned that because "the . . . testimony would involve acts by the same Defendant against the same victim . . . and the acts [were] of the [same] general nature," the evidence was admissible as proof of "motive, opportunity, intent, common scheme, plan and absence of mistake or accident." [The victim] then testified as follows:

I woke up to [appellant] touching me between my legs with his hands and with his penis. It hurt. I started to whimper a little bit and I said to him that I need to go to the bathroom. I didn't need to go to the bathroom. I just wanted to remove myself from the room. I went into the [ ] bathroom and . . . s[a]t on the toilet. I remember . . . my feet didn't touch the floor. And I left the bathroom, [ ] I went [ ] into my aunt's room . . . a different bedroom and I just laid on her floor. And then he came into the room after and asked why I didn't come back. I didn't answer and he climbed into my aunt's bed.

*Thompson v. State,* 181 Md.App. 74, 78–81, 955 A.2d 802, 806–807 (2008). (Footnotes omitted).

## Discussion

### I.

█ Petitioner argues that he is entitled to a new trial on the ground that the Circuit Court erred in admitting into evidence the victim's testimony about the "uncharged 1978 incident, which occurred when [Petitioner] was 14 years old." The Circuit Court ruled that evidence of the 1978 incident was admissible under Md. Rule 5–404(b), which provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

■ It is clear that the ruling at issue did not violate Md. Rule 5–404(b), which codified the "sexual propensity" exception to the general rule excluding "other crimes" evidence. As this Court stated in *Vogel v. State*, 315 Md. 458, 554 A.2d 1231 (1989), the "sexual propensity" exception is applicable to evidence of "prior illicit sexual acts [which] are similar to the offense for which the accused is being tried and involve the same victim." *Id.* at 466, 554 A.2d at 1234. Before Md. Rule 5–404(b) was adopted, this Court stated:

The primary policy consideration underlying the rule against other crimes evidence "is that this type of evidence will prejudice the jury against the accused because of the jury's tendency to infer that the accused is a 'bad man' who should be punished regardless of his guilt of the charged crime, or to infer that he committed the charged crime due to a criminal disposition." Yet, in the area of sex crimes, particularly child molestation, "courts have been likely to admit proof of prior acts to show a party's conformity with past conduct." Professor McLain suggests that this relaxation of the general prohibition is "probably because the character evidence is believed to have greater probative value in those circumstances." In sex crimes cases the special relevance of the other crimes evidence that may be admissible is a criminal propensity particularized to similar sex crimes perpetrated on the same victim.

Thus, in a sex offense prosecution, when the State offers evidence of prior sexual criminal acts of the same type by the accused against the same victim, the law of evidence already has concluded that, in general, the probative value, as substantive evidence that the defendant committed the crime charged, outweighs the inherent prejudicial effect. The discretion exercised by the trial judge in weighing

unfair prejudice against probative value is concerned with special features in the particular case.

*Acuna v. State,* 332 Md. 65, 75, 629 A.2d 1233, 1238 (1993) (Citations omitted). The record shows that the Circuit Court (1) was not clearly erroneous in finding that the sexual offenses committed by Petitioner against the very same victim in 1978 had been proven by "clear and convincing" evidence, and had "special" probative value, and (2) did not abuse its discretion in admitting that evidence on the ground that its probative value outweighed the danger of unfair "bad actor" prejudice against Petitioner.

■ Petitioner argues that Section 3–8A–23 of the Courts and Judicial Proceedings Article (CJ § 3–8A–23) prohibits the State from introducing evidence of "criminal acts,[1] or wrongs" that were committed by an adult defendant when he or she was a juvenile. That statute, in pertinent part, provides:

§ **3–8A–23.** **Effect of proceedings under [the Juvenile Causes Act] subtitle.**

(b) *Adjudication and disposition not admissible as evidence.*

An adjudication and disposition of a child pursuant to this subtitle are not admissible as evidence against the child:

(1) In any criminal proceeding prior to conviction; or

(2) In any adjudicatory hearing on a petition alleging delinquency; or

---

1. This Court has stated that "[t]he *raison d'etre* of the Juvenile Causes Act is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal." *In re Darryl D.,* 308 Md. 475, 481, 520 A.2d 712, 715 (1987) (quoting *Matter of Davis,* 17 Md.App. 98, 104, 299 A.2d 856, 860 (1973)); *see also Moore v. Miley,* 372 Md. 663, 673–74, 814 A.2d 557, 563 (2003) (" '[T]he keystone of Maryland's disposition of juvenile delinquents is that 'the moral responsibility or blameworthiness of the child [is] of no consequence,' such that delinquency adjudication is seen as the opportunity for the State to provide needed rehabilitative intervention." (quoting *Victor B.,* 336 Md. 85] at 91–92, 646 A.2d [1012] at 1015)). Accordingly, "[j]uvenile proceedings are governed by a separate, pervasive scheme of specific statutes and rules developed by the Maryland General Assembly and the Court of Appeals." *Victor B.,* 336 Md. at 96, 646 A.2d at 1017.

(3) In any civil proceeding not conducted under this subtitle.

(c) Evidence given in proceeding under this subtitle inadmissible in criminal proceeding. Evidence given in a proceeding under this subtitle is not admissible against the child in any other proceeding in another court, except in a criminal proceeding where the child is charged with perjury and the evidence is relevant to that charge and is otherwise admissible.

According to Petitioner, because Md. Rule 5–404(b) must be read in light of the policy underlying the Juvenile Causes Act, evidence of unadjudicated juvenile acts allegedly committed by an adult defendant is inadmissible as a matter of law in subsequent criminal proceedings. Trial judges do not have discretion to admit evidence that is inadmissible as a matter of law. The issue of whether CJ § 3–8A–23 "trumps" Md. Rule 5–404(b) presents a question of law.[2]

The State argues that the Circuit Court was correct in its conclusion that the admissibility of the evidence at issue was controlled by Md. Rule 5–404(b) because the statutory prohibition in CJ § 3–8A–23 does not apply to evidence that was never presented in a juvenile proceeding. The Court of Special Appeals agreed with that argument. So do we.

To resolve a question of law that is controlled by a statute, this Court must "identify and effectuate the legislative intent underlying the statute(s) at issue." *Serio v. Baltimore County*, 384 Md. 373, 390, 863 A.2d 952, 962 (2004) (quoting *Drew v. First Guaranty Mortgage Corp.*, 379 Md. 318, 327, 842 A.2d 1, 6 (2003)). While this Court must be guided by the plain language of the applicable statute, we must "read statutory language within the context of the statutory scheme, considering the 'purpose, aim, or policy of the enacting body.'"

---

**2.** *See State v. Faulkner*, 314 Md. 630, 634, 552 A.2d 896, 898 (1989), and *Figgins v. Cochrane*, 403 Md. 392, 942 A.2d 736 (2008) (stating that a trial judge does not have discretion to admit evidence that must be excluded as a matter of law) (quoting *Hall v. Univ. of Md. Med. Sys. Corp.*, 398 Md. 67, 82–83, 919 A.2d 1177, 1186 (2007)).

*Serio,* 384 Md. at 390, 863 A.2d at 962 (quoting *Drew,* 379 Md. at 327, 842 A.2d at 6; citing *Beyer v. Morgan State Univ.,* 369 Md. 335, 349, 800 A.2d 707, 715 (2002); *In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332, 346 (2001)).

▆▆▆▆▆▆ Having applied these principles to the issue before us, we agree with the Court of Special Appeals that "the purpose and plain language of § 3–8A–23 does not provide a basis for extending its application to the uncharged juvenile misconduct in this case." *Thompson v. State,* 181 Md.App. 74, 87, 955 A.2d 802, 810 (2008). "A court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application." *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). "Juvenile proceedings are governed by a separate, pervasive scheme of specific statutes and rules developed by the Maryland General Assembly and the Court of Appeals." *In re Victor B.,* 336 Md. 85, 96, 646 A.2d 1012, 1017 (1994). If the General Assembly intended to exclude evidence of other crimes allegedly committed by an adult defendant when the defendant was a juvenile, but never presented in a juvenile court proceeding, the General Assembly would certainly have placed that restriction in CJ § 3–8A–23. We therefore conclude that the admissibility of the evidence at issue is controlled by Md. Rule 5–404(b).

Our conclusion is consistent with the holding of *State v. Shedrick,* 61 Ohio St.3d 331, 574 N.E.2d 1065 (1991), in which the Supreme Court of Ohio was presented with two conflicting interpretations of a statute that, prior to July 1, 1992,[3] provided:

---

**3.** The Ohio legislature amended R.C. 2151.358(H), effective July 31, 1992. That statute now provides:

Evidence of a judgment rendered and the disposition of a child under that judgment is not admissible to impeach the credibility of the child in any action or proceeding. Otherwise, the disposition of a child under the judgment rendered or any evidence given in court is admissible as evidence for or against a child in any action or proceeding in any court in accordance with the Rules of Evidence

"The judgment rendered by the court under this chapter shall not impose any of the civil disabilities ordinarily imposed by conviction of a crime in that the child is not a criminal by reason of the adjudication, nor shall any child be charged or convicted of a crime in any court except as provided by this chapter. **The disposition of a child under the judgment rendered or any evidence given in court is not admissible as evidence against the child in any other case or proceeding in any other court, except that the judgment rendered and the disposition of the child may be considered by any court only as to the matter of sentence or to the granting of probation.** The disposition or evidence shall not operate to disqualify a child in any future civil service examination, appointment, or application."

R.C. 2151.358(H) (Emphasis supplied).

In the Common Pleas Court of Summit County, Ohio, a jury convicted Donald Shedrick of the aggravated murder and rape of a thirteen year old girl, Lori E., whose body was discovered on December 15, 1988. The State's case against Shedrick included evidence that, in 1987, he raped a thirteen year old girl, Christine Y. Shedrick noted an appeal to the Court of Appeals of the Ninth Appellate District, and presented that Court with two assignments of error:

ASSIGNMENT OF ERROR I

"The trial court erred in admitted evidence of prior acts of the defendant when such evidence and such acts had been the subject of a prior juvenile court adjudication."

\* \* \*

ASSIGNMENT OF ERROR II

"The trial court erred in allowing the admission of prior acts of the defendant to prove identity, plan, scheme or design."

---

and also may be considered by any court as to the matter of sentence or to the granting of probation.

A divided three-judge panel of the intermediate appellate court held that neither assignment was "well taken," and that the judgment of the trial court should be affirmed. That panel, however, (1) acknowledged that the majority's disposition of the first assignment of error was "in conflict with the judgment upon the same question by the Court of Appeals of the Eighth Appellate District," (2) concluded that this conflict should be resolved by the Supreme Court of Ohio, and (3) therefore entered a JOURNAL ENTRY that included the following provisions:

> The question of law upon which the conflict of opinion exists is whether a person who testified in a juvenile court proceeding is precluded by R.C. 2151.358(h) from testifying on the same subject in any other case or proceeding in any other court.

> Therefore, the record of State v. Shedrick ... is hereby certified to the Supreme Court of Ohio for review and final determination.

While holding that a remand was necessary to determine whether the evidence of the 1987 rape should have been excluded on the ground that the witnesses who testified about that crime (Christine Y., Christine's mother, and a detective who investigated the 1987 case) had previously testified against Shedrick in juvenile court, the Supreme Court of Ohio (1) explained what constitutes "evidence given in [juvenile] court," and (2) rejected Shedrick's argument that the evidence of the 1987 rape should have been excluded under Rule 404(B) of the Ohio Rules of Evidence.

On the issue of what does—and does not—constitute "evidence given in [juvenile] court," the Supreme Court stated:

> When evidence is given in the form of testimony, it is the essential subject matter of the testimony which constitutes the evidence and not the precise words used. The transcript is not the "evidence," but only a record of the evidence. Therefore, where a witness has testified in a juvenile proceeding, R.C. 2151.358(H) prohibits that witness from giving essentially the same testimony in any other

criminal case or criminal proceeding. Accordingly we hold that, under R.C. 2151.358(H), testimony, documents, or exhibits, presented as evidence against a juvenile in a juvenile proceeding, are inadmissible against the juvenile in any other criminal case or criminal proceeding except ones in which the same underlying alleged crime is being adjudicated.

\* \* \*

Our interpretation of R.C. 2151.358(H) does not end the inquiry necessary to decide this case. Appellant argues that the "spirit" of R.C. 2151.358(H) precludes the use of any evidence which formed the basis of prior juvenile disposition.... Appellant argues that even if he pled guilty to the allegations of a juvenile complaint, any evidence which could have been used against him is inadmissible in a subsequent case....

We do not agree. This argument is also resolved by the language of R.C. 2151.358(H). **The language is unambiguous in its prohibition against "any evidence given in [juvenile] court." The statute does not exclude evidence that might have been given in juvenile court.**

\* \* \*

Because of the discrepancy between the facts represented by state's counsel at oral argument and the facts suggested by the record, we must remand the case to the trial court for a disposition in accordance with the law as we have set it forth. **If C.Y., her mother, or [the officer who investigated the 1987 case] testified at the juvenile proceeding, then R.C. 2151.358(H) bars the testimony of those witnesses in this case to the extent that such testimony is essentially the same as that previously given. On the other hand, if any one of these three witnesses did not testify at the juvenile proceeding or if their testimony in the instant case was not essentially the same, then such testimony would be admissible in the instant case.** Finally, if evidence was admitted in this case in violation of R.C. 2151.358(H), the trial court must determine whether

the effect was prejudicial and whether a new trial is warranted for Shedrick.

*Id.* at 1068–69. (Emphasis supplied; footnote omitted).[4]

As to Shedrick's argument that evidence of the 1987 rape should have been excluded under Rule 404(B) of the Ohio Rules of Evidence, the Supreme Court stated:

> In the case before us the identity of the perpetrator is at issue because Shedrick denies that [he committed the crime] ... We conclude the similarities between the two crimes is sufficient. The evidence of the first rape tends to show the identity of the perpetrator of the second. Therefore, evidence of Shedrick's prior rape of C.Y. meets the requirements for admission set by Evid. R. 404(B) and R.C. 2945.59 [notwithstanding that the defendant was a juvenile].

*Id.* at 1070.

Our conclusion is also consistent with the holdings of *State v. Collier,* 892 S.W.2d 686 (Mo.App. W.D.1994), and *People v. Whittington,* 74 Cal.App.3d 806, 141 Cal.Rptr. 742 (1977). In *Collier,* while affirming a murder conviction, the Court of Appeals of Missouri held that a statute similar to § 3–8A–23 did not prohibit the State from introducing evidence of the defendant's uncharged juvenile misconduct. The *Collier* Court stated:

> Although the defendant was a minor when the above incidents of burglary and robbery occurred, it appears that he was never subjected to juvenile proceedings for any of them. Nor were the questions on cross-examination de-

---

4. Upon remand to the trial court, the State stipulated that (1) the testimony of Christine, her mother, and the investigating officer was presented to the jury, and (2) that testimony was inadmissible under R.C. 2151.358(H) because it was similar to the testimony presented by those witnesses in the juvenile proceeding that preceded the jury trial. The trial court found, however, that the admission of that evidence was "harmless beyond a reasonable doubt," and that decision was affirmed in *State v. Shedrick,* 80 Ohio App.3d 823, 610 N.E.2d 1147 (1992). Thereafter, the United States Supreme Court denied Shedrick's petition for *writ of certiorari. Shedrick v. Ohio,* 508 U.S. 923, 113 S.Ct. 2374, 124 L.Ed.2d 279 (1993).

signed to elicit statements made to juvenile authorities or matters pertaining to any juvenile proceedings.

*Id.* at 691.

In *Whittington,* the Court of Appeal of California, First Appellate District, Division Two, affirmed a rape conviction based in part upon evidence of another rape allegedly committed by the defendant while he was a juvenile, on the ground that the evidence at issue "clearly raises a reasonable and strong inference that defendant . . . was also the perpetrator of the instant crime." 74 Cal.App.3d at 816, 141 Cal.Rptr. 742. In support of that conclusion, the *Whittington* Court stated:

> Here both offenses: 1) occurred at about the same time, 5 p.m. and 7 p.m., and in the same general vicinity, i.e., several blocks from one another and from defendant's residence at 15 Middle Street; 2) began near an apartment house when defendant approached the victim on a public street; 3) included defendant's attempt to initiate a friendly conversation with the victim; 4) occurred in a garbage collection area near the street; 5) were initiated by the defendant's sudden seizure of victims with his hand clamped over the mouth; 6) ostensibly were for the purpose of robbery, as each victim was asked for money; 7) occurred while both defendant and his victims were only partially disrobed; he removed only his pants and each victim, only her pantyhose; 8) were consummated in a short period of time; 9) defendant told the victims not to worry because he was not diseased and that he had not had sexual relations for a long time; 10) defendant engaged the victims in conversation after consummation of the crime; 11) neither victim sustained any physical injury other than the accomplishment of the sexual act; 12) each victim was a young attractive Caucasian woman; and 13) defendant offered the identical alibi defense—his presence at Walton's residence within walking distance of each incident.

*Id.* at 815–16, 141 Cal.Rptr. 742.

For the reasons stated above, we hold that CJ § 3–8A–23 simply does not apply to the *testimony* presented by the State

in the case at bar, which was clearly admissible under Md. Rule 5–404(b), and which had never been "given" in a juvenile proceeding.[5]

## II.

The indictment that the Circuit Court amended on its own initiative, in pertinent part,[6] asserted:

**IN THE CIRCUIT COURT FOR BALTIMORE CITY**
State of Maryland—vs—**Karl Thompson** Defendant(s)
Date of Offense: **05/01/86–08/31/86**
Location: **5429 Lynview Avenue**
Complainant: **[The victim's name]**

## INDICTMENT

The Jurors of the State of Maryland for the body of the City of Baltimore, do on their own oath present that aforesaid DEFENDANT(S), late of said City, heretofore on or about the date(s) of offense set forth above, at the location(s) set forth above, in the City of Baltimore, State of Maryland, *feloniously did COMMIT the CRIME of RAPE in the 2nd DEGREE*, as defined in Article 27, Sections 461 and 463 of the Annotated Code of Maryland, *upon the*

---

**5.** Our holding is not inconsistent with *State v. Dixon*, 656 S.W.2d 49 (Tenn.Crim.App.1983). That case presented the issue of whether an adult defendant could be cross-examined about whether he had—when he was a juvenile—*committed* acts that had resulted in delinquency adjudications. The prosecutor in that case conceded that a delinquency adjudication was not a "conviction" for purposes of Tennessee's "impeachment by conviction" rule, but argued that the defendant could be questioned about the *conduct* that resulted in the delinquency adjudications. The trial court accepted that argument, but the appellate court did not. In the case at bar, Petitioner was not questioned about conduct that had been the subject of a juvenile delinquency proceeding.

**6.** The statutes cited in the indictment, which were in effect in 1986, were transferred to the Criminal Law Article (CL) by Chapter 26, Acts of 2002. Second degree rape is proscribed by CL § 3–304. Sexual offense in the third degree is proscribed by CL § 3–307. Sexual offense in the fourth degree is proscribed by CL § 3–308. Assault in the second degree is proscribed by CL § 3–203.

*aforesaid Complainant;* contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.

## SECOND COUNT

And the Jurors aforesaid, upon their oath aforesaid, do further present that the aforesaid DEFENDANT(S), late of said City, on the said date(s), at said place, at the City aforesaid, *feloniously did commit the crime of SEXUAL OFFENSE in the 3rd DEGREE,* in violation of Article 27, Sections 461 and 464B of the Annotated Code of Maryland, *upon the aforesaid complainant;* contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.

## THIRD COUNT

And the Jurors aforesaid, upon their oath aforesaid, do further present that the aforesaid DEFENDANT(S), late of said City, on said date(s), at the said place, at the City aforesaid, *unlawfully did commit the crime of SEXUAL OFFENSE in the 4th DEGREE,* in violation of Article 27, Section 461 and 464C of the Annotated Code of Maryland, *upon aforesaid Complainant;* contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State.

## FOURTH COUNT

And the Jurors aforesaid, upon their oath aforesaid, do further present that the aforesaid DEFENDANT(S), late of said City, on the said date(s), at the said place, at the City aforesaid, *unlawfully did ASSAULT* [**the victim**] *in the SECOND DEGREE* in violation of Article 27, Section 12A; contrary to the form of the Act of Assembly in such case made and provided and against the peace, government, and dignity of the State.

The verdict sheet pertaining to this indictment contains the following questions and answers:

**514**

## VERDICT SHEET

1. Do you find that on or about November, 1986 at Goodnow Road in Baltimore City, State of Maryland, the Defendant, KARL THOMPSON, did commit the crime of Rape in the Second Degree against [the victim]?

Not Guilty _____ Guilty _yes_

2. Do you find that on or about November, 1986 at Goodnow Road in Baltimore City, State of Maryland, the Defendant, KARL THOMPSON[, d]id commit the crime of Sexual Offense in the Third Degree against [the victim]?

Not Guilty _____ Guilty _yes_

3. Do you find that on or about November, 1986 at Goodnow Road in Baltimore City, State of Maryland, the Defendant, KARL THOMPSON[, d]id commit the crime of Sexual Offense in the Fourth Degree against [the victim]?

Not Guilty _____ Guilty _yes_

4. Do you find that on or about November, 1986 at Goodnow Road in Baltimore City, State of Maryland, the Defendant, KARL THOMPSON[, d]id commit the crime of Assault in the Second Degree against [the victim]?

## GUILTY

The record shows that the Circuit Court ruled as follows at the close of the State's case:

[O]n my own initiative, I make this amendment finding it would not be a change in the character of the offenses. I would note that the character of the offense described by [the victim] ... was substantially the same as that described in her written statement [to Detective Worts] of May 11th[, 2005,] which the Court has had an opportunity to review, and that her in-court testimony ... differed from the indictments ... only with respect to Thanksgiving and the location. I will moreover note that the defense has been aware of the location variance since before trial, because it was told to me prior to trial that her testimony with respect

to the 1986 events [would be] that they occurred at [the] Goodnow Road [location] and not at the Lynview Avenue location. While it is unclear why the State has not made [a] motion [to amend the indictment] before . . . it should come as no surprise to the defense that the indictments were to be amended. I will also note that the Court is not [making] any . . . substantiative changes with respect to [the] indictments. . . . [C]hanging the date of the offense in the indictment constitutes a matter of form and not substance . . . and it may be amended in the Court's discretion without changing the character of the offense.

From our review of the record, the victim never stated that the 1986 offenses occurred at the Lynview Avenue address. Although the victim was unable to provide Detective Wortz with the exact address, she stated that the 1986 offenses occurred at the "studio apartment type of thing" where Petitioner was living at that time. Prior to the date of his indictments, Petitioner was arrested on a warrant issued by a District Court Commissioner, who was presented with an Application for Statement of Charges that included the following:

## APPLICATION FOR STATEMENT OF CHARGES

I, [Detective Jones], apply for a statement of charges and a summons or warrant which may lead to the arrest of the named Defendant because on or about 1 Jan. 79–31 Dec. 86 at 5429 Lynview Ave. Baltimore Md. 21215 and 5105 Goodnow Rd. Baltimore Md. 21206, the above named Defendant Did sexually abuse and rape [the victim] F/B/31 DOB 07/29/1973 from the time she was 6 to the time she was 13 years of age.

▪ The Statement of Charges filed pursuant to this Application mistakenly asserted that all of the offenses occurred at the Lynview Avenue address, and this clerical mistake was not corrected when the indictments were filed.

According to Petitioner, he is entitled to a new trial on the ground that this ruling violated Md. Rule 4–204, which provides:

On motion of a party or on its own initiative, the court at any time before verdict may permit a charging document to be amended except that if the amendment changes the character of the offenses charged, the consent of the parties is required. If amendment of a charging document reasonably so requires, the court shall grant the defendant an extension of time or continuance.

Petitioner argues that, even though the amendments at issue changed only the period of time within which the crimes occurred and the location at which the crimes occurred, those amendments changed "the character of the offenses charged." While rejecting this argument, the Court of Special Appeals stated:

"Matters relating to the character of the offense are those facts that must be proved to make the act complained of a crime." *Tapscott v. State*, 106 Md.App. 109, 134, 664 A.2d 42 (1995). Consequently, the only change to an indictment that requires the consent of the parties is one that would alter the elements of the crime charged. And, thus, "[a]n indictment may be corrected without the defendant's consent if the amendment does not alter any of the elements of the offense and results in no prejudice." *Tapscott*, 106 Md.App. at 134[, 664 A.2d at 54].

\* \* \*

We have repeatedly held that the date that an indictment alleges that the criminal conduct occurred "may be amended in the court's discretion without changing the character of the offense." *Manuel [v. State]*, 85 Md.App. [1,] 18–19[, 581 A.2d 1287, 1295 (1990)]. *See ... Tucker v. State*, 5 Md.App. 32, 35, 245 A.2d 109[, 111] (1968) (declaring that "[i]t is well-established that the State is not confined in its proof to the date alleged in the charging document"). Thus, the circuit court did not abuse its discretion in amending the date stated in the indictment.

Nor does the amendment changing the location of the conduct charged from one address to another within Baltimore City change the character of the offense charged. In *Makins v. State,* 6 Md.App. 466, 470, 252 A.2d 15, 17 (1969), we held that the trial court did not err in permitting the State to amend an indictment to reflect the correct address at which the alleged daytime housebreaking occurred. We explained: "The incident as drawn clearly charged the appellant with the crime of daytime housebreaking with intent to steal the personal goods of another. Each of the elements of that crime was alleged, without regard to the particular apartment number specified, and none of the essential elements of the offense were changed by the amendment." *Id.* (Internal citation omitted). The same reasoning applies here. The indictment set forth the elements of the offense charged without regard to the particular house address, and therefore, "none of the essential elements of the offense were changed" by the amendment of the address.

*Thompson v. State,* 181 Md.App. at 98–100, 955 A.2d at 817. We agree with that analysis.

 In *Makins,* the Court of Special Appeals relied upon *Corbin v. State,* 237 Md. 486, 206 A.2d 809 (1965), in which this Court stated:

As to what constitutes substance and what is merely formal in an indictment, it may be said that all facts which must be proved to make the act complained of a crime are matters of substance, and that all else—including the order of arrangement and precise words, unless they alone will convey the proper meaning—is formal.

*Id.* at 489–90, 206 A.2d at 811. An amendment that constitutes merely a "matter of form" does not change the character of the offense. *Johnson v. State,* 358 Md. 384, 388, 749 A.2d 769, 771 (2000).

In *State v. Mulkey,* 316 Md. 475, 560 A.2d 24 (1989), while holding that "the exact date of the offense is not an essential element, and is not constitutionally required to be set forth [in

an indictment,]" this Court cited with approval several decisions of the Court of Special Appeals that "support the notion that the time of an offense stated in an indictment need not be precise." *Id.* at 482, 560 A.2d at 27.

In *Busch v. State*, 289 Md. 669, 426 A.2d 954 (1981), while holding that the State should not have been permitted to substitute the words "resist arrest by a police officer" for "resist and hinder a police officer," this Court stated:

> Because the charging document as amended contained a specific reference to an arrest, it charged the offense of resisting arrest.

> The amendment here substituted the offense of resisting arrest for the originally charged offense of resisting, obstructing, or hindering an officer in the performance of his duties. The charge as amended required proof of an arrest while the original charge did not. Thus, the basic description of the offense charged was changed.

> Because the amendment changed the character of the offense originally charged, it was not a matter of form. The petitioner did not consent to the amendment, and it is, therefore, impermissible.

*Id.* at 679, 426 A.2d at 959. In *Johnson, supra,* while holding that the State should not have been permitted to substitute "cocaine" for "marijuana" in a criminal information charging violations of the Maryland Controlled Dangerous Substances Act, this Court stated:

> [A]s in *Thanos [v. State*, 282 Md. 709, 387 A.2d 286 (1978)] and in *Brown [v. State*, 285 Md. 105, 400 A.2d 1133 (1979)], the description of the specific act alleged was significantly changed by the amendment. The information initially accused the defendant of possessing marijuana, whereas the amended information charged an entirely different act, possessing crack cocaine. It follows that, under *Thanos* and *Brown*, the amendment did change "the character of the offense charged."

358 Md. at 390, 749 A.2d at 772. In the case at bar, however, the amendments did not substitute a different offense for any of the offenses charged in the indictment.

Although Petitioner did not file a demand for a bill of particulars,[7] the record shows that he received a copy of the Application for Statement of Charges when he was arrested. The record also shows that, prior to trial, Petitioner's trial counsel was provided with a copy of the victim's statement to Detective Wortz. Because the discovery provided by the State made it clear that the 1986 incident occurred in November of that year at the Goodnow Road address, Petitioner is not entitled to a new trial on the ground that he was unfairly prejudiced by the amendments at issue.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY THE COSTS.**

GREENE, J., dissents and files opinion in which BELL, C.J., and ELDRIDGE, J., join.

Dissenting Opinion by GREENE, Judge, which BELL, C.J., and ELDRIDGE, J., Join.

I respectfully dissent. Although I agree with the majority's conclusion that the amendment of the charges did not change the character of the offenses charged, I disagree with the majority's conclusion that the evidence of Thompson's uncharged juvenile conduct was properly admitted into evidence during his criminal prosecution for other crimes. I would hold that evidence, of such acts, is not admissible to the extent that evidence of adjudicated acts committed by a juvenile is not admissible in subsequent criminal proceedings under the Juve-

---

7. Since October 1, 2002, CL § 3–317(b) has provided that, "[i]n a case in which the general form of [charging document] described in subsection (a) of this section is used, the defendant is entitled to a bill of particulars specifically setting forth the allegations against the defendant." From July 1, 1977 to October 1, 2002, Article 27, § 461B(b) provided that a defendant who is charged with rape or a sexual offense "is entitled to a bill of particulars specifically setting forth the allegation against him."

nile Causes Act, Md.Code (1973, 2006 Repl.Vol.), § 3–8A–01 *et seq.* of the Courts & Judicial Proceedings Article.

## I.

Karl Thompson, the petitioner, was charged in the Circuit Court for Baltimore City with multiple sexual offenses allegedly committed against Kassandra Timm between the years 1983 and 1986. At Thompson's trial, over defense counsel's objection, the court permitted the prosecutor to present evidence of uncharged sexual offenses that Thompson allegedly committed against Ms. Timm in the summer of 1978, when Ms. Timm was age five and Thompson was age 14. The Circuit Court reasoned that evidence of the 1978 incident was admissible under Md. Rule 5–404(b) to prove motive, opportunity, intent, or common scheme.

Ms. Timm testified that Thompson sexually abused her at her grandparents' home in 1978. She stated, in pertinent part:

> I woke up to [Thompson] touching me between my legs with his hands and with his penis. It hurt. I started to whimper a little bit and I said to him that I need to go to the bathroom. I didn't need to go to the bathroom. I just wanted to remove myself from the room. I went into the bathroom and ... sat on the toilet. I remember ... my feet didn't touch the floor.

> And I left the bathroom, I went into my aunt's room ... a different bedroom and I just laid on her floor. And then he came into the room after and asked why I didn't come back. I didn't answer and he climbed into my aunt's bed....

Ms. Timm also testified about four incidents that occurred after 1978. Regarding an incident that occurred in 1983, she testified:

> My mother and I drove to Maryland ... to visit. The whole family was there, I remember a very full house ... we slept in [Thompson's] room.... And there were a lot of other people in the room....

Everyone was going to sleep and [Thompson] kept saying my mother's name, Linda, are you asleep? . . . And when she stopped answer[ing] he came and he, he touched me with his hands between my legs. He molested me. . . . I mean he was touching me in my vagina with his hands. He was inserting his fingers between my legs.

Ms. Timm testified that, in 1986, during her Thanksgiving school break, she visited Thompson at his apartment in Baltimore. Ms. Timm stated that before Thompson left for work one day, Thompson told her that she could sleep in his bed with his girlfriend, Stephanie Perry. Ms. Timm stated that she awoke that night to find "[Thompson's] penis inside of [her]."

On July 11, 2006, the jury rendered several guilty verdicts. With respect to the incident occurring in 1983, the jury found Thompson guilty of third-degree and fourth-degree sex offenses; the jury also found the petitioner guilty of second-degree rape, third-degree and fourth-degree sexual offenses, as well as second-degree assault, for the incident in 1986. The court sentenced Thompson to 20 years incarceration.

Thompson appealed his convictions to the Court of Special Appeals, which affirmed the judgments entered below. *Thompson v. State*, 181 Md.App. 74, 955 A.2d 802 (2008). The intermediate appellate court held that the 1978 incident was admissible into evidence pursuant to Maryland Rule 5–404(b). In so holding, the Court of Special Appeals rejected Thompson's argument that § 3–8A–23 of the Courts & Judicial Proceedings Article applies to unadjudicated acts. The intermediate appellate court noted that interpreting § 3–8A–23 to bar the admissibility of unadjudicated conduct in subsequent criminal proceedings conflicts with the basic cannon of statutory construction that "a court may neither add nor delete language" of a statute. *Thompson*, 181 Md.App. at 86–87, 955 A.2d at 810 (quoting *Price v. State*, 378 Md. 378, 387, 835 A.2d 1221 (2003)).

## II.

In Maryland, evidence of other crimes, wrongs, or acts committed by a defendant is generally not admissible in

criminal proceedings. Title 5 of the Maryland Rules of Evidence, Rule 5–404(b) thus provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

The General Assembly has deemed certain acts to be exempt from Rule 5–404(b)'s purview altogether. Under the Juvenile Causes Act, §§ 3–8A–01 *et seq.* of the Courts & Judicial Proceedings Article, prior adjudications or dispositions of juveniles, as well as any evidence introduced therein, may not generally be admitted into evidence in subsequent criminal proceedings. The applicable provision reads, in pertinent part:

§ **3–8A–23. Effect of proceedings under subtitle.**

(b) *Adjudication and disposition not admissible as evidence.*—An adjudication and disposition of a child pursuant to this subtitle are not admissible as evidence against the child:

(1) In any criminal proceeding prior to conviction; or

(2) In any adjudicatory hearing on a petition alleging delinquency; or

(3) In any civil proceeding not conducted under this subtitle.

(c) Evidence given in proceeding under this subtitle inadmissible in criminal proceeding.—Evidence given in a proceeding under this subtitle is not admissible against the child in any other proceeding in another court, except in a criminal proceeding where the child is charged with perjury and the evidence is relevant to that charge and is otherwise admissible.

Section 3–8A–23 of the Courts & Judicial Proceedings Article is one part of a comprehensive Juvenile Causes Act, an act that establishes "a separate system of courts, procedure and method of treatment for juveniles." *In re Victor B.*, 336 Md.

85, 94, 646 A.2d 1012, 1016 (1994). We have explained that "[t]he *raison d'etre* of the Juvenile Causes Act is that a child does not commit a crime when he commits a delinquent act and therefore is not a criminal." *In re Darryl D.*, 308 Md. 475, 481, 520 A.2d 712, 715 (1987) (quoting *Matter of Davis*, 17 Md.App. 98, 104, 299 A.2d 856, 860 (1973)); *see also Moore v. Miley*, 372 Md. 663, 673–74, 814 A.2d 557, 563 (2003) (" '[T]he keystone of Maryland's disposition of juvenile delinquents is that 'the moral responsibility or blameworthiness of the child [is] of no consequence,' such that delinquency adjudication is seen as the opportunity for the State to provide needed rehabilitative intervention." (quoting *Victor B.*, 336 Md. at 91–92, 646 A.2d at 1015)). Accordingly, "[j]uvenile proceedings are governed by a separate, pervasive scheme of specific statutes and rules developed by the Maryland General Assembly and the Court of Appeals." *Victor B.*, 336 Md. at 96, 646 A.2d at 1017.

Section 3–8A–02 of the Courts and Judicial Proceedings Article lists the purposes of the relevant subtitle of the Juvenile Causes Act. Those purposes are:

(1) To ensure that the Juvenile Justice System balances the following objectives for children who have committed delinquent acts: [1]

(i) Public safety and the protection of the community;

(ii) Accountability of the child to the victim and the community for offenses committed; and

(iii) Competency and character development to assist children in becoming responsible and productive members of society;

---

1. The Juvenile Causes Act defines a "delinquent act" as "an act which would be a crime if committed by an adult"; a "delinquent child" as "a child who has committed a delinquent act and requires guidance, treatment, or rehabilitation"; and a "child" as "an individual under the age of 18 years." § 3–8A–01(*l*),(m),(d) of the Courts and Judicial Proceedings Article.

(2) To hold parents of children found to be delinquent responsible for the child's behavior and accountable to the victim and the community;

(3) To hold parents of children found to be delinquent or in need of supervision responsible, where possible, for remedying the circumstances that required the court's intervention;

(4) To provide for the care, protection, and wholesome mental and physical development of children coming within the provisions of this subtitle; and to provide for a program of treatment, training, and rehabilitation consistent with the child's best interests and the protection of the public interest;

(5) To conserve and strengthen the child's family ties and to separate a child from his parents only when necessary for his welfare or in the interest of public safety;

(6) If necessary to remove a child from his home, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents;

(7) To provide to children in State care and custody:

(i) A safe, humane, and caring environment; and

(ii) Access to required services; and

(8) To provide judicial procedures for carrying out the provisions of this subtitle.

§ 3–8A–02(a) of the Courts & Judicial Proceedings Article. This section also states that this subtitle, of which § 3–8A–23 is a part, "shall be liberally construed to effectuate these purposes." § 3–8A–02(b) of the Courts & Judicial Proceedings Article; *see also In re Leslie M.*, 305 Md. 477, 482, 505 A.2d 504, 507 (1986) (rejecting a "restrictive" reading of former Maryland Rule 916 due to the "liberal statutory construction" required by the Juvenile Causes Act).

In the case *sub judice*, Thompson contends that the Circuit Court erred in admitting into evidence testimony concerning the uncharged 1978 incident, which occurred when Thompson was 14 years old. According to Thompson, Md. Rule 5–404(b) must be read in light of the policy underlying the Juvenile

Causes Act, and that, under such a construction, evidence of unadjudicated juvenile acts is not admissible in subsequent criminal proceedings as a matter of law. The State argues to the contrary, maintaining that the Circuit Court acted within its discretion in admitting into evidence the acts committed by Thompson when he was a juvenile. The majority concludes that § 3–8A–23 does not apply to testimony presented by the State in the prosecution of Thompson for criminal offenses because the evidence was admissible under Md. Rule 5–404(b) and had never been "given" in a juvenile proceeding. I disagree with that holding primarily because of the statutory mandate that § 3–8A–23 should be construed liberally.

First, the determination of whether there exists an exception to Md. Rule 5–404(b) is a matter of law not within the trial judge's discretion. *Faulkner,* 314 Md. at 634, 552 A.2d at 898. Similarly, the determination of whether an act is exempt from the purview of Rule 5–404(b) is a questions of law and not a matter of discretion. *See Figgins v. Cochrane,* 403 Md. 392, 942 A.2d 736 (2008) (explaining that we review the determination of whether evidence must be excluded as a matter of law) (quoting *Hall v. Univ. of Md. Med. Sys. Corp.,* 398 Md. 67, 82–83, 919 A.2d 1177, 1186 (2007)).

Because the determination that the existence of an exemption to Md. Rule 5–404(b) is a legal determination, we should consider whether the trial judge erred in admitting into evidence testimony about the alleged sexual assault by Thompson in 1978. As explained, Thompson argues that § 3–8A–23 of the Courts and Proceedings Article provides the applicable evidentiary exemption. We should therefore interpret the language of that statute to determine whether it does, in fact, apply to the testimony at issue in this case. In considering the Juvenile Causes Act, we construe this statutory language liberally to effectuate the purposes of the Act. § 3–8A–02(b) of the Courts and Proceedings Article. With that requirement in mind, our goal is to "identify and effectuate the legislative intent underlying the statute(s) at issue." *Serio v. Baltimore County,* 384 Md. 373, 863 A.2d 952, 962 (2004) (quoting *Drew v. First Guaranty Mortgage Corp.,* 379

Md. 318, 327, 842 A.2d 1, 6 (2003)). The statute's plain language is the best source of legislative intent, and that language guides our understanding of this intent, but we do not read the plain language of a statute in a vacuum. *Serio,.* 384 Md. at 373, 863 A.2d at 962 (citing *Drew,* 379 Md. at 327, 842 A.2d at 6; *Derry v. State,* 358 Md. 325, 336, 748 A.2d 478, 483–84 (2000)). We should instead "read the statutory language within the context of the statutory scheme, considering the 'purpose, aim, or policy of the enacting body.'" *Serio,* 384 Md. at 373, 863 A.2d at 962 (quoting *Drew,* 379 Md. at 327, 842 A.2d at 6; citing *Beyer v. Morgan State Univ.,* 369 Md: 335, 350, 800 A.2d 707, 715 (2002); *In re Mark M.,* 365 Md. 687, 711, 782 A.2d 332, 346 (2001)). As we have stated,

> when we pursue the context of statutory language, we are not limited to the words of the statute as they are printed.... We may and often must consider other "external manifestations" or "persuasive evidence," including a bill's title and function paragraphs ... and other material that fairly bears on the fundamental issue of legislative purpose or goal, which becomes the context within which we read the particular language before us in a given case.

*Williams v. Mayor and. City Council of Baltimore,* 359 Md. 101, 116, 753 A.2d 41, 49 (2000) (quoting *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987)).

With these rules guiding my analysis, I interpret the statute at hand differently than the majority. In my view, if Thompson's juvenile conduct had been adjudicated in a juvenile proceeding, § 3–8A–23 of the Juvenile Causes Act would have precluded admission of the adjudication into evidence, as well as any evidence given in the juvenile proceeding from admission in the criminal proceedings below. Indeed, it is clear that the Legislature intended for juvenile adjudications of delinquent acts to be wholly separate from the criminal justice system. § 3–8A–23(a) of the Courts & Judicial Proceedings Article ("An adjudication of a child pursuant to this subtitle is not a criminal conviction for any purpose and does not impose any of the civil disabilities ordinarily imposed by a criminal

conviction."); *see also* Md.Code C.J. § 3–8A–01(*l*) (defining a delinquent act as an act that "would be a crime if committed by an adult"); *In re Alexander*, 16 Md.App. 416, 420, 297 A.2d 301, 303 (1972) ("We hold that it was the plain legislative intent that a finding of delinquency in a juvenile court should not be equated in any way with a conviction for crime.").

The fact that § 3–8A–23 of the Juvenile Causes Act uses the terms "adjudicate" and "disposition," however, does not mean that unadjudicated conduct is excluded from the prohibition's purview. Construing § 3–8A–23 to apply only to juvenile adjudications is inconsistent with the "legislative purpose or goal" underlying the Juvenile Causes Act, *see Williams*, 359 Md. at 116, 753 A.2d at 49, and it contradicts the basic cannon of statutory interpretation that a court should "avoid a construction of [a] statute that is unreasonable, illogical, or inconsistent with common sense,'" *Walzer v. Osborne*, 395 Md. 563, 573, 911 A.2d 427, 432 (2006) (quoting *Blake v. State*, 395 Md. 213, 224, 909 A.2d 1020, 1026 (2006)). For a juvenile to be found involved and adjudicated delinquent in a juvenile proceeding the State must prove, beyond a reasonable doubt, the conduct giving rise to the juvenile act. Md.Code (1973, 2006 Repl.Vol.), § 3–8A–18(c) of the Courts & Judicial Proceedings Article. Under Rule 5–404(b), however, the State is only required to prove the conduct classified as a crime, wrong, or bad act by a lesser standard, clear and convincing evidence. *Faulkner*, 314 Md. at 634, 552 A.2d at 898. Considering the lower standard of proof under 5–404(b), it would be unreasonable to construe the Juvenile Causes Act as merely precluding the admission of adjudicated juvenile conduct in a subsequent criminal proceeding. Under such a construction, the State could decline to have a juvenile's conduct adjudicated before the juvenile reached age 18, but then introduce that same conduct in a criminal proceeding after the juvenile has turned age 18 or older. The State would then only need to prove the juvenile conduct by clear and convincing evidence, a lesser standard than the Legislature has expressly required for establishing a juvenile delinquent act. *See* § 3–8A–18(c)(i) of the Courts & Judicial Proceedings Article (adopting the stan-

dard of reasonable doubt to prove that a juvenile committed a delinquent act); *In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970) (acknowledging that reasonable doubt is a constitutional safeguard applicable to the adjudicatory stage of a delinquency proceeding).

This interpretation of § 3–8A–23 is untenable. Such an interpretation would allow the State to use Rule 5–404(b) as a way of keeping juveniles out of the juvenile justice system, thereby allowing the State to defeat the Legislature's intent in creating a separate system for the adjudication of juveniles. The explicit purposes underlying the Juvenile Causes Act include rehabilitating and protecting juveniles, developing juveniles' competency and character, holding parents accountable, and strengthening family ties. § 3–8A–02(a) of the Courts & Judicial Proceedings Article. We, therefore, should liberally construe the provisions of the Juvenile Causes Act, including § 3–8A–23, to effectuate these purposes. § 3–8A–02(b) of the Courts & Judicial Proceedings Article. The juvenile justice system cannot achieve any of these purposes if the State diverts juveniles from that system when they commit delinquent acts. Accordingly, we should construe § 3–8A–23 in a way that ensures that the State will direct juveniles to the juvenile justice system when appropriate. By construing the statute to make inadmissible, in a criminal court, evidence of unadjudicated delinquent acts to the same extent as adjudicated delinquent acts, we would ensure that the State cannot bring these acts to the attention of a criminal court when the appropriate venue was the juvenile justice system. Any other interpretation would permit a subversion of the juvenile justices system and thereby eviscerate the Juvenile Causes Act.

Second, the majority's and the State's interpretation of § 3–8A–23 of the Courts & Judicial Proceedings Article contradicts another basic cannon of statutory interpretation: that "[w]hen construing a provision that is part of a single statutory scheme, the legislative intent must be gathered from the entire statute, rather than from only one part." *Jones v. State*, 311 Md. 398, 405, 535 A.2d 471, 474 (1988). Each provision of the Juvenile Causes Act therefore "must be

harmonized both with its immediate context and with the larger context of the entire Juvenile Causes Act." *Jones*, 311 Md. at 405, 535 A.2d at 475 (1988). With the Juvenile Causes Act, the Legislature set forth a statutory scheme that dictates that juvenile acts should be considered by particular courts. For example, the Legislature has decided that the Juvenile Court lacks original jurisdiction in some circumstances. § 3–8A–03(d) of the Courts & Judicial Proceedings Article. In addition, the Legislature has identified certain circumstances where the Juvenile Court may waive jurisdiction in favor of a criminal court. § 3–8A–06 of the Courts & Judicial Proceedings Article. The Legislature has also created a procedure by which a criminal court may transfer some cases to the Juvenile Court, after considering a variety of specified factors. § 3–8A–03(d)(1),(4),(5) of the Courts & Judicial Proceedings Article; *see also* Md.Code (1974, 2008 Repl.Vol.), § 4–202 of the Criminal Procedures Article (providing factors the criminal court must consider in transferring cases to the Juvenile Court). These provisions of the Juvenile Causes Act set forth the limited circumstances where juvenile conduct may come before a criminal court, and we should construe § 3–8A–23 to prohibit the State from creating an additional method for doing so.

Indeed, we have previously said that the lower courts must adhere to the waiver and jurisdiction provisions of the Juvenile Causes Act in regard to delinquent acts committed by individuals who have subsequently reached adulthood. In *In re Appeals No. 1022 & No. 1081*, 278 Md. 174, 176, 359 A.2d 556, 558 (1976), the Juvenile Court had determined that waiver was not warranted in regard to a case involving an adult who had committed a delinquent act while still a juvenile. The court then dismissed the case for lack of jurisdiction over the adult, pursuant to the statute that is now codified as § 3–8A–07(e) of the Courts and Proceedings Act. *Id.* On appeal, we agreed with the Juvenile Court and rejected the State's argument that waiver was mandatory in such a case. *In re Appeals*, 278 Md. 174, 178–79, 359 A.2d 556, 559–60. We held instead that a waiver hearing must be conducted before a

criminal court may consider a delinquent act, even if the person who committed the act subsequently reached adulthood. *In re Appeals,* 278 Md. at 178–79, 359 A.2d at 559–60. In other words, absent a waiver hearing and determination that jurisdiction over an adult who allegedly committed a delinquent act as a juvenile should be waived, a criminal court cannot consider the alleged delinquent act. Relying on *In re Appeals,* recently the Court of Special Appeals reached the same conclusion in a similar case. *In re Saifu K.,* 187 Md.App. 395, 978 A.2d 881 (2009) (rejecting the State's argument that the Juvenile Court was required to waive its jurisdiction when the defendant had allegedly committed a delinquent act at age 14, but a petition was not served on him until he had reached age 21). In the case *sub judice,* I would similarly construe § 3–8A–23 to ensure that criminal courts do not consider delinquent acts absent adherence to the waiver and jurisdiction procedures of the Juvenile Causes Act.

Third, we should liberally construe § 3–8A–23 of the Courts & Judicial Proceedings Article "reasonably with reference to its purpose, aim, [and] policy." *In re Keith G.,* 325 Md. 538, 542, 601 A.2d 1107, 1109 (1992). As the foregoing makes clear, the General Assembly's aim, in enacting the Juvenile Causes Act, was for juvenile acts, in most instances, to be wholly separate from the criminal justice system. Moreover, the well-established purpose underlying the Juvenile Causes Act is to rehabilitate juvenile offenders. *See, e, g., In re Julianna B.,* 179 Md.App. 512, 574, 947 A.2d 90, 126–27 (2008) ("[The appellate courts] have repeatedly noted that the Legislature intended the juvenile justice system to be 'guided generally by principles of protection and rehabilitation of the individual rather than a societal goal of retribution and punishment.' ") (quoting *Smith v. State,* 399 Md. 565, 580, 924 A.2d 1175 (2007)), *vacated on other grounds,* 407 Md. 657, 967 A.2d 776 (2009); *Lopez–Sanchez v. State,* 155 Md.App. 580, 598, 843 A.2d 915 (2004) ("The General Assembly enacted the Juvenile Causes Act ... to advance its purpose of rehabilitating the juveniles who have transgressed...."). That § 3–8A–23 of the Courts & Judicial Proceedings Article effectively prevents

a prosecutor from using a juvenile's adjudicated delinquent acts against him in a later criminal proceeding is indeed evident of the General Assembly's broad policy of distinguishing between juvenile transgressions and those acts that should be brought before the criminal justice system.

From the exclusion of charged juvenile conduct in subsequent criminal proceedings pursuant to § 3–8A–23 of the Courts & Judicial Proceedings Article, it necessarily follows that the Legislature intended to grant the same protections to uncharged juvenile conduct. It is plainly inconsistent with the underlying policy and overall scheme of the Juvenile Causes Act to admit as evidence, in a criminal case, the unadjudicated delinquent acts of a juvenile when those same acts, if determined by the Juvenile Court to have been delinquent, would not have been admitted as evidence in a criminal case. Accordingly, there is no sound justification for distinguishing between the unadjudicated delinquent acts of a juvenile offender and the adjudicated delinquent acts of a juvenile offender for purposes of the admissibility of evidence in a criminal case. Both acts are not admissible into evidence in a criminal case. Therefore, I would hold that, under Maryland law, juvenile acts are not legislatively deemed to be "crimes, wrongs, or acts" within the meaning of Rule 5–404(b), because the General Assembly has determined that the acts are irrelevant in a criminal prosecution.

In holding that evidence of unadjudicated juvenile conduct is inadmissible in subsequent criminal proceedings to the extent that adjudicated conduct is precluded pursuant to § 3–8A–23 of the Courts & Judicial Proceedings Article, such a holding would be consistent with the concerns expressed by the court in *State v. Dixon,* 656 S.W.2d 49 (Tenn.Crim.App.1983). In *Dixon,* the Criminal Court of Appeals of Tennessee rejected the prosecution's argument that "bad acts" of a juvenile were distinguishable from juvenile adjudications. *Dixon,* 656 S.W.2d at 52. Although the court found that the admission of juvenile acts was harmless error, it noted that allowing the juvenile "bad acts" into evidence would enable the State to

circumvent Federal Rule of Evidence 609(d).[2] *Dixon,* 656 S.W.2d at 52. Like § 3–8A–23 of the Courts & Judicial Proceedings Article, Federal Rule of Evidence 609(d) limits the admissibility of juvenile adjudications as evidence in subsequent proceedings. I agree that allowing evidence of uncharged juvenile conduct would open the door for some prosecutors to elude the juvenile court system by choosing to not charge juvenile acts in order to admit evidence of the acts in a later criminal court proceeding. This would enable some prosecutors to bypass the clear prohibition against the admission of juvenile adjudications and dispositions in subsequent criminal proceedings, as well as the clear prohibition against the admission of evidence given in juvenile proceedings, contained in § 3–8A–23 of the Courts & Judicial Proceedings Article and would undermine the State's policy of protecting juveniles.

The State is correct in pointing out that § 3–8A–23 of the Courts & Judicial Proceedings Article does not expressly mention unadjudicated juvenile acts; however, both the State and the majority place less significance on the purpose of the Juvenile Causes Act and § 3–8A–23's function within it. The Juvenile Causes Act created Maryland's juvenile court system and process for dealing with juvenile offenders. *Lopez–Sanchez,* 155 Md.App. at 600, 843 A.2d at 927 ("The separate system of courts created by the Juvenile Causes Act to address the problems of juvenile offenders are governed by their own procedures, as set forth in CJ section 3–8A–01, *et seq.*"). Section 3–8A–23 is a subsection within the Juvenile Causes Act entitled "Effect of proceedings under subtitle" that specifically addresses the effect of juvenile adjudications

---

**2.** Tennessee adopted Federal Rule of Evidence 609(d) in *State v. Butler,* 626 S.W.2d 6, 10 (Tenn.1981). That Rule provides:

> Juvenile adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

and proceedings[3] arising under the Juvenile Causes Act. That § 3–8A–23 does not explicitly reference unadjudicated juvenile conduct does not change the clear legislative policy of protecting or insulating juveniles from the criminal justice system unless or until waived from the juvenile processes. Moreover, this Court's focus should not be only on the language of the statute but on the underlying legislative intent to separate juveniles and juvenile acts from the criminal justice system.

After holding that the 1978 incident was properly admitted into evidence and that § 3–8A–23 of the Courts & Judicial Proceedings Article did not include unadjudicated juvenile acts, the intermediate appellate court noted that it "decline[d] to construe ... § 3–8A–23 so that it prohibits the introduction of the very evidence that the Court of Appeals has declared to be of "special relevance in a sex crime involving the same perpetrator, victim, and criminal conduct." *Thompson*, 181 Md.App. at 87, 955 A.2d at 810. The majority adopts this position. I do not find that concern compelling or consistent with the underlying policy of the Juvenile Causes Act. Maryland courts recognize a special "sexual propensity" exception to Rule 5–404(b). Adopted by this Court in *Vogel v. State*, 315

---

**3.** The term "proceeding" is undefined in the Juvenile Causes Act. We recently explained:

> Black's Law Dictionary defines a "proceeding" as: "1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action...." BLACK'S LAW DICTIONARY[ ] 1241 [(8th ed. 2004)]; see also WEBSTER'S II NEW COLLEGE DICTIONARY 902 (3d ed. 2005) (providing the legal definition of "proceeding" as "[l]itigation" or "[t]he act of instituting or conducting litigation"); EDWIN E. BRYANT, THE LAW OF PLEADING UNDER THE CODES OF CIVIL PROCEDURE 3 (1894) (" 'Proceeding' is a word much used to express the business done in courts.").

*Kramer v. Liberty Property*, 408 Md. 1, 21, 968 A.2d 120, 132 (2009). As I construe the scope of the term "proceeding" within the meaning of the Juvenile Causes Act, my focus is upon acts that were adjudicated in the context of juvenile proceedings, as well as acts that could have been adjudicated if juvenile proceedings had been initiated.

Md. 458, 554 A.2d 1231 (1989), the "sexual propensity" exception allows prosecutors in sex crime cases to admit into evidence "prior illicit sexual acts [which] are similar to the offense for which the accused is being tried and involve the same victim." *Vogel,* 315 Md. at 466, 554 A.2d at 1234. In *Acuna v. State,* 332 Md. 65, 629 A.2d 1233 (1993), this Court elaborated on the sexual propensity exception stating that:

> The primary policy consideration underlying the rule against other crimes evidence "is that this type of evidence will prejudice the jury against the accused because of the jury's tendency to infer that the accused is a 'bad man' who should be punished regardless of his guilt of the charged crime, or to infer that he committed the charged crime due to a criminal disposition." Yet, in the area of sex crimes, particularly child molestation, "courts have been likely to admit proof of prior acts to show a party's conformity with past conduct." Professor McLain suggests that this relaxation of the general prohibition is "probably because the character evidence is believed to have greater probative value in those circumstances." In sex crimes cases the special relevance of the other crimes evidence that may be admissible is a criminal propensity particularized to similar sex crimes perpetrated on the same victim.

> Thus, in a sex offense prosecution, when the State offers evidence of prior sexual criminal acts of the same type by the accused against the same victim, the law of evidence already has concluded that, in general, the probative value, as substantive evidence that the defendant committed the crime charged, outweighs the inherent prejudicial effect. The discretion exercised by the trial judge in weighing unfair prejudice against probative value is concerned with special features in the particular case.

*Acuna,* 332 Md. at 75, 629 A.2d at 1238 (citations omitted). The "sexual propensity" exception is based on the notion that evidence of prior sexual misconduct against the same victim has a special probative value, it is asserted, sufficient enough that it generally outweighs the inherent "bad actor" prejudice of other crimes evidence.

As discussed above, the State of Maryland's policy of protecting or insulating juveniles from the criminal justice system absent a waiver is evident from the Juvenile Causes Act. In light of that policy, juvenile acts are not legislatively deemed "crimes, wrongs, or acts" within the meaning of Rule 5–404(b) and are therefore not relevant in subsequent criminal proceedings. Because I would hold that juvenile acts are not within the purview of Rule 5–404(b), I would conclude that the "sexual propensity" exception to Rule 5–404(b) does not justify the admissibility of evidence of juvenile acts in subsequent criminal proceedings. In other words, a juvenile act does not constitute a criminal act within the meaning of the sexual propensity exception.

## III.

The Circuit Court's admission into evidence testimony with regard to Thompson's juvenile act was not harmless error. An error is deemed harmless when a reviewing court, upon an independent review of the record, can declare beyond a reasonable doubt that the error in no way influenced the verdict. *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976). In the instant case, the State presented the 1978 incident to the court as the first of five instances of sexual misconduct between Thompson and Ms. Timm. The jury convicted Thompson on charges arising from two of the five incidents. Specifically, the jury heard evidence that Thompson was a sexual predator when he was 14 years old. In addition, the jury heard that Thompson demonstrated that same deviant behavior toward the same victim when Thompson became an adult. It is highly unlikely that the jury separated Thompson's alleged juvenile acts from his criminal acts. Thus, I do not believe that this Court can say beyond a reasonable doubt that the admission of evidence that Thompson sexually assaulted Ms. Timm when Thompson was a juvenile in no way influenced the jury's verdict. Therefore, the Court should reverse the judgment of the Court of Special Appeals and remand the case for purposes of a new trial.

Chief Judge BELL and Judge ELDRIDGE authorize me to state that they join in this dissenting opinion.